754 P.2d 1160

**Denise DUNCAN, as surviving spouse of Russell Duncan, deceased, on her own behalf and for and on behalf of Deana Marie Duncan, Jennifer Anne Duncan and Stephanie Rae Duncan, surviving children of Russell Duncan, and for and on behalf of Billie R. Duncan and Sharon A. Duncan, surviving parents of Russell Duncan, Plaintiffs/Appellees/Cross–Appellants,**

v.

**The STATE of Arizona; the City of Eloy; Pinal County Community College District; Paul Young, Jr.; James Daley, Defendants/Appellants/Cross–Appellees.**

**No. 2 CA–CV 87–0331.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 16, 1988.

As Corrected March 16, 1988.

Review Denied June 7, 1988.

Langerman, Begam, Lewis & Marks by Samuel Langerman and Elliott G. Wolfe, Phoenix, for plaintiffs/appellees/cross-appellants.

Kimble, Gothreau, Nelson & Cannon, P.C. by Stephen Kimble and Michael Gothreau, Tucson, for defendant/appellant-cross-appellee City of Eloy.

Jones, Skelton & Hochuli by William R. Jones, Jr., Donald L. Myles, and Linda A. Drake, Phoenix for defendant/appellant/cross-appellee State.

## OPINION

ROLL, Judge.

Defendants / appellants / cross-appellees State of Arizona and City of Eloy appeal from a judgment in the amount of $3,385,-726.88 entered in favor of the surviving spouse, children, and parents of Russell Duncan. For the reasons set forth below, we affirm the judgment against the City of Eloy but reverse the judgment as to State of Arizona.

## FACTS

Russell Duncan was accidentally shot and killed by a fellow law enforcement trainee on November 9, 1983, during a training exercise conducted by the Central

Arizona Regional Law Enforcement Training Academy (CARLETA).

CARLETA is operated by the Pinal County Community College District at Central Arizona College and provides a basic peace officer certification course. CARLETA only accepted students who were sponsored by law enforcement agencies. The minimum physical, mental, and moral qualifications for peace officers as well as the minimum training courses and standards for training facilities are defined by the Arizona Law Enforcement Officer Advisory Council (ALEOAC).[1] ALEOAC mandates the curriculum for a 400–hour basic peace officer's course, which must be successfully completed before an individual is eligible to serve as a regular or reserve officer with the authority to enforce the criminal laws of the state with the full powers of arrest as defined by A.R.S. § 13–3883.

Around August 18, 1983, City of Eloy Chief of Police Edward Cibbarelli signed James Daley's application for enrollment at CARLETA, indicating the City of Eloy Police Department's sponsorship of Daley. The City of Eloy provided Daley with a custom-made City of Eloy regular police officer's uniform, nameplate, badge, a standard .357 magnum service revolver with 18 rounds of ammunition, and a key to the City of Eloy Police Department office. The ammunition was issued to Daley in connection with Daley's duties as a reserve officer during his attendance at the academy. Daley signed a document acknowledging that all of the items had to be returned at the direction of the City of Eloy upon Daley's "retirement" or "termination of employment." The City of Eloy was responsible for Daley's tuition at CARLETA if Daley did not successfully complete the academy.

Duncan, Daley, and 21 other cadets, designated as Class 22, began the CARLETA program on August 24, 1983. On November 9, 1983, Class 22 was engaged in a "felony stop" exercise. During this exercise, certain trainees played the role of felony suspects while another trainee assumed the role of peace officer. The peace officer cadet was then evaluated on his conduct during the stop. Duncan was designated the driver of the felony suspect vehicle and was armed with an unloaded handgun. Another recruit was a passenger in the felony suspect vehicle. Daley, designated as the peace officer, initiated his traffic stop and began shouting commands to Duncan and the passenger. Duncan exited the vehicle and raised his arms over his head. Daley saw the butt of the handgun which was concealed under Duncan's jacket. Following normal procedure, Daley had his service revolver pointed at Duncan. Duncan suddenly ran around the car door as if to take cover. Daley responded by squeezing the trigger of his service revolver, discharging a live round of ammunition which struck Duncan in the head and killed him. The evidence indicates that Daley had arrived late to this exercise because he was picking up an additional uniform from the Eloy Police Department. At no time from his arrival until after Russell Duncan's death was Daley's revolver checked to ensure that it was unloaded.

The regulations at CARLETA prohibited the pointing of a loaded weapon at any cadet and provided procedures for checking to ensure that weapons used in the felony stop exercise were unloaded. Specifically, cadets were to check their own weapons, then check each others' weapons, and finally, an additional check was to be conducted by the instructor for the course. No evidence was presented that ALEOAC was aware of the specific manner in which the felony stop exercise was conducted.

Duncan, who was 28 at the time of his death, was survived by his wife, Denise, three children under seven years of age, and his parents.

## PROCEDURAL HISTORY

On July 6, 1984, a wrongful death action was filed by Denise Duncan on her own

---

1. By statute, ALEOAC is charged with establishing minimum qualifications for all law enforcement officers in Arizona and prescribing minimum courses of training and minimum standards for training facilities. A.R.S. § 41–1822(3), (4).

behalf and on behalf of Duncan's three surviving daughters and Russell Duncan's parents. The State of Arizona, City of Eloy, Pinal County Community College, Daley, and Paul Young, Jr., the instructor during the felony stop exercise, were named as defendants.

Duncan alleged that the City of Eloy was vicariously liable for the negligence of James Daley and was independently negligent for (1) hiring Daley, (2) entrusting him with a deadly weapon and ammunition, and (3) failing to adequately supervise his activities. Duncan alleged that the State of Arizona was liable because the State of Arizona through ALEOAC and the Department of Public Safety was negligent with regard to establishment of safe training standards at CARLETA.

On November 5, 1985, the City of Eloy filed a motion for summary judgment on all theories of liability. Duncan filed a response to that motion and a cross-motion for partial summary judgment on the issue of the City of Eloy's vicarious liability for James Daley's negligence. Both the motion and the cross-motion were denied by the judge sitting at that time, who resigned shortly thereafter.

On January 20, 1986, during hearings on pretrial motions, the new trial judge agreed to reconsider the summary judgment motion. After hearing oral argument and taking the matter under advisement, the court denied the City of Eloy's motion for summary judgment and granted Duncan's motion for partial summary judgment, finding that an agency and/or employee relationship existed between Daley and the City of Eloy.

Trial commenced on January 23, 1986. On February 19, 1986, the jury returned a verdict for the Duncans against all defendants in the total amount of $4,385,726.88. The judgment on the verdict was entered on April 16, 1986.

Both the State of Arizona and the City of Eloy filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The state also filed a motion for remittitur. The trial court denied the motions except that the court granted defendants' motion for a new trial on the issue of damages as to Denise Duncan unless she consented to a $1,000,000 remittitur. On August 15, 1986, Denise Duncan filed a statement of acceptance of remittitur.

## ISSUES ON APPEAL

### Appeal by the City of Eloy

The City of Eloy argues that the trial court erred: (1) when it reconsidered and granted Duncan's partial motion for summary judgment; (2) when it submitted to the jury Duncan's claims of negligent supervision, negligent entrustment, and negligent hiring; (3) in refusing to admit evidence of Daley's subsequent successful performance with the Eloy Police Department; and (4) by refusing to instruct the jury on the issue of intervening, superseding cause.

### Appeal by the State of Arizona

The State of Arizona contends that the trial court erred when: (1) it denied the State of Arizona's motion for summary judgment because (a) ALEOAC is immune from liability because it was exercising a discretionary legislative function or, in the alternative, (b) it had no duty to enact specific safety regulations regarding the use of operable weapons at CARLETA; (2) it allowed expert testimony as to the scope of ALEOAC's statutory duty; (3) it failed to instruct the jury that the acts of Young and Daley constituted intervening, superseding causes; and (4) it precluded defense expert testimony regarding annuities.

### Cross–Appeal

The Duncans appeal the denial of prejudgment interest, and Denise Duncan appeals the trial court's order compelling her to consent to a $1,000,000 remittitur.

### THE APPEAL OF THE CITY OF ELOY
#### RECONSIDERATION OF SUMMARY JUDGMENT

The City of Eloy contends that the trial court erred in reconsidering Eloy's motion

for summary judgment and the Duncan's cross-motion for partial summary judgment on the issue of Daley's relationship with the City of Eloy. Eloy further contends that summary judgment should have been granted in their favor as a matter of law.

The record reflects that reconsideration was allowed because the parties agreed that the issue of the relationship between Daley and Eloy was purely a question of law. The matter was raised during pre-trial motions when the attorneys asked the trial court what references could be used to refer to the relationship between Eloy and Daley during the trial. In the ensuing discussion, it became clear that the issue needed to be resolved. Eloy claims to have objected to the trial court's reconsideration.

Our review of the record indicates that the City of Eloy's objection was based on a need to supplement the record. The City of Eloy asked that the judge's ruling be reserved until the close of evidence, at which time the trial court would be requested to render its decision.

The trial court, in its reconsideration of the motions, allowed counsel for the City of Eloy to supplement its initial motion with the additional evidence which it thought was necessary to the ruling. It was permissible for the trial court to reconsider the motions for summary judgment. *Moses v. Daru*, 4 Ariz.App. 385, 389, 420 P.2d 957, 961 (1967).

## MASTER–SERVANT RELATIONSHIP

■ In reviewing the granting of summary judgment, this court must view the evidence in the light most favorable to the party opposing the motion and construe all inferences arising from the evidence in favor of the opposing party. *Brown Wholesale Electric Co. v. Safeco Insurance Co.*, 135 Ariz. 154, 157, 659 P.2d 1299, 1302 (App.1982). Summary judgment is appropriate where the record shows there is no genuine dispute as to any material fact, that only one inference can be drawn from those material facts, and that based upon

those material facts, the moving party is entitled to judgment as a matter of law. *Giovanelli v. First Federal Savings and Loan Association of Phoenix*, 120 Ariz. 577, 581, 587 P.2d 763, 767 (App.1978). The parties agree that there is no dispute as to the material facts in this case. The City of Eloy argues that the legal conclusion reached by the judge is incorrect. We disagree.

The City of Eloy contends that Daley was not a paid employee of the City of Eloy and that the City of Eloy had no right to direct or control Daley's actions at CARLETA. However, even if Daley was a mere volunteer, he could be considered a servant of the City of Eloy. *Scottsdale Jaycee's v. Superior Court of Maricopa County*, 17 Ariz.App. 571, 574, 499 P.2d 185, 188 (1972), citing Restatement (Second) of Agency § 225 (1958). In *Bond v. Cartwright Little League, Inc.*, 112 Ariz. 9, 14, 536 P.2d 697, 702 (1975), our supreme court stated:

> The two key elements for the determination of whether a gratuitous undertaking is part of the master-servant relationship are whether the actor has submitted himself to the directions and control of the one for whom the service is done and whether the primary purpose underlying the act was to serve another.

■ Daley was encouraged to apply for employment at the Eloy Police Department in July of 1983 by both Chief Cibbarelli and Lt. Gatewood. He submitted to a medical examination at their request and was told to return from vacation in time to pick up the uniforms needed for attendance at the academy. Chief Cibbarelli signed a sponsorship form obligating the City of Eloy to pay Daley's tuition at CARLETA in the event that he failed to complete the academy.[2] The Eloy Police Department issued to Daley several uniforms, all necessary leather items, a departmental revolver with ammunition, an official badge, and a key to the police building. The City of Eloy retained the right at all times to require

2. ALEOAC training funds were to be used to reimburse the academy if Daley successfully completed the course of study.

Daley to return all of these items. In September, Chief Cibbarelli confronted Daley after learning that Daley had applied for employment at other law enforcement agencies and guaranteed Daley a full-time paid position as a regular officer with the Eloy Police Department upon graduation from CARLETA. The facts compel a finding that a master-servant relationship existed and that the City of Eloy is liable under a theory of *respondeat superior*. The conduct of a servant is within the scope of employment if it is of the kind he is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve a master. *Olson v. Staggs–Bilt Homes, Inc.*, 23 Ariz.App. 574, 576, 534 P.2d 1073, 1075 (1975); *Transamerica Insurance Co. v. Valley National Bank*, 11 Ariz.App. 121, 462 P.2d 814 (1969); Restatement (Second) of Agency § 228 (1958).

In addition to being vicariously liable for the actions of Daley, the jury could reasonably have found that the City of Eloy was negligent when it issued a firearm and ammunition to Daley without providing adequate firearms safety training. This failure is illustrated by Chief Cibarelli's testimony that Daley was not provided with the Eloy Police Department's "General Orders" pertaining to the carrying and use of firearms until after Duncan's death. One policy statement therein prohibited off-duty reserve officers from carrying firearms.

### ADDITIONAL ARGUMENTS

Because we find that the trial court properly granted summary judgment on the issue of master-servant relationship, we need not reach the City of Eloy's argument that insufficient evidence existed to submit to the jury the issue of negligent hiring. We will affirm the lower court whenever the record supports any legal theory which will sustain the judgment. *Duhammel v. Star*, 133 Ariz. 558, 561, 653 P.2d 15, 18 (App.1982). In this case the jury returned a general verdict against all defendants. "[A] general verdict will be upheld when several counts, issues or theories are submitted to the jury if evidence on one count,

issue or theory, is sufficient to sustain the verdict." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 341, 666 P.2d 83, 86 (App.1983), citing *Reese v. Cradit*, 12 Ariz.App. 233, 469 P.2d 467 (1970). Accordingly we also do not reach the issue of the relevance of Daley's job performance after the accident to the claim of negligent hiring.

■ The City of Eloy claims that an instruction on intervening, superseding cause should have been given to the jury due to the failure of Paul Young to make certain that Daley's weapon was unloaded. This argument is not persuasive since it was the City of Eloy's agent, Daley, who arrived late, brought a loaded handgun, failed to inspect or unload it, and fired it at Duncan.

The negligent conduct of Young was within the scope of the foreseeable risk of harm created by the negligent conduct of Daley and thus does not constitute a superseding cause. *Rossell v. Volkswagen of America*, 147 Ariz. 160, 169, 709 P.2d 517, 525 (1985), *cert. denied* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986); *Ontiveros v. Borak*, 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983); Restatement (Second) of Torts § 442(B) (1965). There was no error in the refusal to give instruction.

### APPEAL OF THE STATE OF ARIZONA
### NO DUTY TO ENACT REGULATIONS

■ Liability of the State of Arizona at trial was based upon the theory that the state, through ALEOAC, had a duty to adopt mandatory provisions which would have prevented Daley's use of an operable weapon during the felony stop exercise.

A negligence action will lie only if there is a duty recognized by law which required the State of Arizona to enact safety regulations at CARLETA to protect others against unreasonable risk of harm. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985); *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). The question of the existence of a duty is normally one for the court as a matter of law. *Beach v. City of*

*Phoenix,* 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983). In *Markowitz,* the supreme court stated:

> The existence of a duty is not to be confused with details of the standard of conduct. ... [D]etails of conduct bear upon the issue of whether the defendant who does have a duty has breached the applicable standard of care and not whether such a standard of care exists in the first instance. * * * "The question is whether the relationship of the parties was such that [the defendant] was under an obligation to use some care to avoid or prevent injury to [the plaintiff]." If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks. * * * [Citations omitted.]

*Markowitz, supra,* 146 Ariz. at 355–56, 706 P.2d at 367–68. *See also Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984), citing W. Prosser and W. Keaton, *The Law of Torts* § 53 at 356 (5th ed. 1984).

The Arizona legislature created ALEOAC in 1968. A.R.S. §§ 41–1821 through 41–1828. The authority and duties of ALEOAC are set forth in A.R.S. § 41–1822.

Pursuant to its legislative mandate, ALEOAC has enacted rules and regulations[3] in prescribing minimum qualifications of physical, mental, and moral fitness for peace officers, prescribing minimum courses of training, and establishing minimum standards for training facilities. However, regulations contain no provisions governing specific conduct or safety standards for the mandated basic peace officer's curriculum, nor do the statutes specifically require the state to ensure the safety of a particular training program. CARLETA is independently owned and operated by the Pinal County Community College District. The District administers, supervises, and conducts its training programs within the broad guidelines formulated by ALEOAC.

In Title 32 of the Arizona Revised Statutes, the State of Arizona is given the responsibility of establishing the standards for licensing and certification for more than 30 professions, including physicians, contractors, dentists, funeral directors and embalmers, nurses, opticians, pharmacists, physical therapists, and security guards. Each of the various regulatory boards is charged with enacting such standards and regulations as are appropriate to fulfill the functions and intent of the legislation. This professional oversight for the protection of Arizona citizens includes establishment of criteria for evaluation of the curriculum used to train applicants for licenses under the various positions. The existence of these licensing practices by state agencies does not compel the conclusion that the State of Arizona is required to enact safety regulations for all of the training programs it chooses to evaluate or for which it establishes minimum standards for licensing. The State of Arizona, through ALEOAC, was not required to exercise its power to enact safety regulations concerning firearms used at training facilities for law enforcement officers.

We vacate the judgment entered against the State of Arizona and direct entry of judgment in favor of the state. Our resolution of this issue on appeal obviates the need to address the other issues raised by the State of Arizona.

### DUNCAN'S ISSUES ON CROSS–APPEAL

The Duncans argue that the trial court: (1) erred in denying prejudgment interest on the non-economic damages; and (2) abused its discretion by forcing Denise Duncan to choose between a reduction in damages or a new trial on damages only.

### PREJUDGMENT INTEREST

Prejudgment interest is to be awarded in Arizona only when the amount sought is readily ascertainable and subject to exact computation. *Peterson v. Valley*

---

**3.** These rules are set forth in Chapter Four of Title 13 of Arizona's Official Compilation of Rules and Regulations (ACRR).

*National Bank of Phoenix,* 102 Ariz. 434, 442, 432 P.2d 446, 454 (1967); *Fogleman v. Peruvian Associates,* 127 Ariz. 504, 622 P.2d 63 (App.1980), *overruled in part on other grounds, Fleming v. Pima County,* 141 Ariz. 149, 685 P.2d 1301 (1984). The amounts awarded for non-economic damages in a tort case are not readily ascertainable or subject to exact computation prior to the return of a verdict and award in favor of a party. We decline to abandon the clear precedent of Arizona law.

## REMITTITUR

 Denise Duncan argues that the trial court impermissibly coerced her consent to a $1,000,000 remittitur by threatening to grant a new trial on damages if she did not agree to the remittitur. Although Denise Duncan consented to the remittitur, she is entitled to cross-appeal on this issue. Ariz. R.Civ.P., 59(i)(2), 16 A.R.S.

A great deal of discretion is vested in the trial court regarding a determination of the adequacy of a verdict. *Mammo v. State,* 138 Ariz. 528, 532, 675 P.2d 1347, 1351 (App.1983). In *Creamer v. Troiano,* 108 Ariz. 573, 575, 503 P.2d 794, 796 (1972), the supreme court stated:

> It is interesting to note that in every single one of these cases we affirmed the trial court's order. That in itself should carry a strong inference that one of the key factors in our decisions is to give the trial judge the benefit of the doubt. Like the jury, he has had the opportunity to observe the witness' demeanor on the stand, and his ruling on additur, remittitur, and new trial, because of an inadequate or excessive verdict, will generally be affirmed, because it will nearly always be more soundly based than ours can be.

The trial court did not abuse its discretion in ordering a remittitur.

## CONCLUSION

We affirm the judgment entered against the City of Eloy, reverse the judgment against the State of Arizona, and deny Denise Duncan's cross-appeal.

LIVERMORE, P.J., and FERNANDEZ, J., concur.