938 P.2d 84

Mary W. DUKE, surviving spouse of Dale Duke, Sr., individually and on Behalf of Sylvia A. Joy, surviving child of Dale Duke, Sr., Plaintiffs/Appellants/Cross–Appellees,

v.

COCHISE COUNTY, Cochise County Sheriff's Office, and Cochise County Board of Supervisors, Defendants/Appellees/Cross–Appellants.

No. 2 CA–CV 95–0185.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 31, 1996.

Review Denied June 24, 1997.

Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm and Steven D. Copple, Phoenix, and Law Offices of Richard D. Grand by Richard D. Grand, Tucson, for Plaintiffs/Appellants/Cross–Appellees.

Alan K. Polley, Cochise County Attorney by John A. MacKinnon and Paula N. Wilk, Bisbee, for Defendants/Appellees/Cross–Appellants.

## OPINION

ESPINOSA, Presiding Judge.

In this appeal, appellants Mary W. Duke and her daughter, Sylvia A. Joy, seek restoration of jury verdicts totaling $3,550,000 awarded against Cochise County, the Cochise County Sheriff's Department, and the Cochise County Board of Supervisors (collectively, the County). Appellants contend that the trial judge abused his discretion by refusing to recuse himself post-trial, by remitting their verdicts for wrongful death, and by vacating the verdict awarding Duke damages for emotional distress. The County cross-appeals, contending that appellants were not entitled to sanctions against the County pursuant to Ariz.R.Civ.P. 68, 16 A.R.S. For the following reasons, we affirm the remittitur, but reverse the order vacating the award for emotional distress and vacate the imposition of Rule 68 sanctions.

### Background

In September 1993, four inmates escaped from the maximum security unit of the Cochise County Jail. One of the escapees, Floyd Thornton, broke into the home of Mary and Dale Duke in Bisbee, Arizona, while the Dukes were away. The Dukes returned around noon and, as Dale Duke opened the

door to the house, he was shot in the chest by Thornton and killed. Mary Duke was behind her husband and witnessed the shooting. The inmate took her into the house, tied her up, and held her prisoner for several hours before fleeing. At the time, the Dukes had been married 53 years.

Mary Duke, on behalf of herself and two of her adult children, Sylvia Joy and Daniel Duke, sued the County for wrongful death. She also brought claims for false imprisonment and emotional distress. Prior to trial, all plaintiffs offered to settle for the $2 million limit of the County's liability coverage, but the offer was refused. At trial, the County admitted its own gross negligence and liability for all damages arising from the acts of Thornton. After a trial solely on the issue of damages, the jury returned verdicts awarding Mary Duke $2.3 million for the wrongful death of her husband, $350,000 for emotional distress, and $200,000 for false imprisonment. In addition, it awarded Sylvia Joy $600,000 and Daniel Duke $100,000 for their father's death. The trial court awarded appellants additional costs and fees pursuant to Rule 68(d).

The County filed various post-trial motions, and appellants requested that the trial judge recuse himself before ruling on them, alleging that public statements by County officials about the large verdicts had "created an environment" in which the court's impartiality would be "questioned." The judge declined, finding that the statements would have no bearing on his decisions.

The trial court subsequently granted the County's motion for judgment notwithstanding the verdict and vacated the $350,000 verdict for emotional distress, finding that Duke had failed to prove the required legal element of physical injury as a result of witnessing the murder of her husband. The court also ordered a new trial based on the County's claim of excessive damages, conditioned upon appellants' acceptance of remittiturs of $1.15 million for Duke's wrongful death claim and $300,000 for Joy's claim. Appellants accepted the remittiturs, and Duke appealed the judgment n.o.v. vacating the verdict for emotional distress. After the County cross-appealed the award of Rule 68 sanctions

against it, Duke and Joy "counter-cross-appealed" the order granting remittitur of their wrongful death verdicts and the denial of their request for recusal.

### Remittitur

We first address appellants' contention that the wrongful death awards were not excessive and that the trial court's remittiturs were an abuse of discretion motivated by the judge's "impartiality." At the outset, the County contends that issue is not properly before us because appellants accepted the trial court's orders of remittitur and did not appeal them, raising the subject only in response to the County's cross-appeal by way of their "counter-cross-appeal." It is well established that appellate courts have jurisdiction only over those matters designated in the notice of appeal or cross-appeal. *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 633 P.2d 383 (1981); *Baker v. Emmerson*, 153 Ariz. 4, 734 P.2d 101 (App.1986). Appellants argue, however, that the remittiturs were properly raised pursuant to Ariz. R.Civ.P. 59(i)(2), 16 A.R.S. The County disagrees, citing *Flory* and *Waqui v. Tanner Bros. Contracting Co.*, 121 Ariz. 323, 589 P.2d 1355 (App.1979).

Rule 59(i)(2) provides:

If a statement of acceptance is filed by the party adversely affected by reduction or increase of damages, and the other party thereafter perfects an appeal, the party filing such statement may nevertheless cross-appeal and the perfecting of a cross-appeal shall be deemed to revoke the consent to the decrease or increase in damages.

Appellants argue that the plain language of the rule allows the accepting parties to cross-appeal a remittitur whenever the other party perfects an appeal "of any kind." Those words, however, do not appear in the rule, nor is such a construction consistent with its underlying purpose and the cases cited by the County.

In *Flory,* our supreme court found the issue of remittitur not properly raised on appeal when it was neither referred to nor mentioned in the accepting parties' cross-

appeal, noting the mandatory requirements of Rule 8(c), Ariz.R.Civ.App.P., 17B A.R.S. The court further found that acceptance of the remittitur was not automatically revoked pursuant to Rule 59(i)(2) in view of the rule's purpose of reversing the common law "estoppel" rule, which bound the accepting party to a remittitur even when haled into the appellate arena by the other party. *State v. Tucson Title Insurance Co.*, 101 Ariz. 415, 420 P.2d 286 (1966). The *Flory* court cited *Waqui*, in which this court stated:

> The rule obviously is intended to afford the accepting party an opportunity to challenge a remittitur or additur by cross-appeal, and has no application in this case, where the cross-appeal is not directed to the additur.

121 Ariz. at 327, 589 P.2d at 1359. Although neither *Flory* nor *Waqui* is directly on point, they do support the County's contention that nothing in Rule 59(i) creates any new rights of appeal for a party which has itself initiated the appeal. Moreover, the rule's purpose of obviating the estoppel rule would not be served by its application here. *See* State Bar Committee Note (1967 Amendment), Ariz. R.Civ.P. 59(i). Appellants accepted the remittitur, and Duke originally appealed only the judgment vacating the award for emotional distress. The County limited its cross-appeal to the Rule 68 sanctions against it. Therefore, appellants are precluded from interjecting the remittitur issues on appeal.

Furthermore, even assuming that the propriety of the remittiturs were properly before us, our review of the record supports the trial court's decision that the wrongful death awards were excessive, given the trial court's great discretion in remittitur orders. *Mammo v. State*, 138 Ariz. 528, 675 P.2d 1347 (App.1983); *see Duncan v. State*, 157 Ariz. 56, 754 P.2d 1160 (App.1988) (one million dollar remittitur in spouse's wrongful death action within trial court's broad discretion). Likewise, we find meritless and unfounded appellants' contention that the trial judge was "biased and prejudiced" and that his remittitur order was a result of "hometown pressure" and the County's "extensive lobbying efforts" about its financial dilemma over the verdicts, particularly when appellants merely requested recusal and did not file a formal notice and affidavit as required by Rule 42(f)(2). *See State v. McGee*, 91 Ariz. 101, 370 P.2d 261, *cert. denied*, 371 U.S. 844, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962).

### Damages for Emotional Distress

■ We next address Duke's contention that the trial court erred in vacating her award for emotional distress. Duke first asserts that the County failed to move for a directed verdict on the issue, a required predicate to its motion for judgment n.o.v. Ariz.R.Civ.P. 50(b), 16 A.R.S. The record, however, indicates the contrary. While no motion for directed verdict actually appears, it can be inferred that such a motion was made off the record,[1] and Duke at no point argued or suggested to the trial court that the motion for judgment n.o.v. was precluded. Generally, an argument not raised below cannot be raised for the first time on appeal. *Dillig v. Fisher*, 142 Ariz. 47, 688 P.2d 693 (App.1984). We therefore address the issue on its merits.

■ In order to recover for negligent infliction of emotional distress, a plaintiff must have been within the "zone of danger" and must prove physical injury resulting from the shock of witnessing injury to a closely related person. *Keck v. Jackson*, 122 Ariz. 114, 116, 593 P.2d 668, 670 (1979). To recover for intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was extreme and outrageous, causing plaintiff severe emotional distress; physical injury need not occur. *Pankratz v. Willis*, 155 Ariz. 8, 744 P.2d 1182 (App.1987); Restatement (Second) of Torts § 46 (1965).

In support of the trial court's ruling, the County points to the amended complaint in which Duke sought damages only "for her

---

1. During trial, plaintiffs submitted a memorandum of law arguing for the inclusion of separate jury instructions and verdict forms for intentional and negligent infliction of emotional distress, apparently in response to the granting of the County's motion for directed verdict on the issue. Shortly thereafter, defense counsel argued against the court's apparent reversal of its decision to direct a verdict on emotional distress.

*Keck v. Jackson* emotional distress and her personal injuries," and the joint pretrial statement in which the County admitted gross negligence and causation, but not any intentional misconduct. Before evidence on damages was offered at trial, however, the court, without objection by the County, instructed the jury as follows:

> [T]he defendants, that is Cochise County and the sheriff, have acknowledged fault and sole liability for all injuries and damages suffered by the Plaintiffs, that is Mary Duke and her children, as a result of the wrongful death of Dale A. Duke. The Defendants have admitted full responsibility for the wrongful acts of Floyd Thornton and for all fault and liability that might otherwise be attributed to Floyd Thornton in this case.

During trial, prior testimony by Duke that she was neither physically harmed nor afraid during the incident was introduced. Her psychiatrist, however, testified that she was "trying to deny it and push it aside" and described her ongoing physical and psychological problems without differentiating injuries attributable to shock from those attributable to loss and grieving. The trial court, again with no objection by the County, gave a final instruction without mentioning what sort of injury Duke was required to prove to recover damages for emotional distress:

> On Plaintiff Mary Duke's claim for injuries resulting from seeing her husband killed, you must decide the full amount of money that will reasonably and fairly compensate Mary Duke for each of the following elements of damages proved by the evidence to have resulted from seeing her husband killed, and that is the nature, extent, and duration of the injuries.

In closing arguments, neither party's counsel addressed the issue of whether Duke was required to prove physical injury to recover for emotional distress. Based on the foregoing evidence and instructions, the jury awarded $350,000 "for injuries resulting from seeing her husband killed."

After trial, the court vacated the award and granted the County's motion for judgment n.o.v. with the following explanation:

Plaintiff Mary W. Duke testified she manifested no physical injury by reason of being present when her husband was murdered. Defendants admitted gross negligence in the escape from the Cochise County jail, which ultimately brought about the result of the death of Mr. Duke. Though the act of the killer may have been an intentional act, it was not the intentional act of defendants, Cochise County and the Cochise County Sheriff's Office. The defendants were negligent in allowing the release of the instrumentality that eventually killed Mr. Duke, whether thereafter negligently or intentionally. The culpable mental state of this loosed instrumentality cannot be attributed to the defendants, whose admitted responsibility is that of gross negligence.

We agree with Duke that the trial court erred. Pursuant to a stipulation, the County admitted "full responsibility for the wrongful acts of Floyd Thornton and for all fault and liability that might otherwise be attributed to Floyd Thornton in this case." Indeed, the day before trial, the County's counsel advised the court "[t]he only issue before this jury is the amount of money that will compensate these people for the loss, period. We have admitted everything else." He also agreed that "the county is responsible for the whole thing" and did not object when Duke's counsel argued to the jury:

> [T]he Defendants have admitted full responsibility for the wrongful acts of Floyd Thornton.... In other words, you could look at this as what would have been the situation if Mr. Thornton was in this courtroom. What are the full damages that would be assessed, and that is what has got to be assessed, and the fact he is not here doesn't change that fact. And the County and the County Sheriff's Office have admitted they are 100 per cent at fault....

Having effectively made an unqualified admission of fault that was broad enough to encompass all of appellants' claims, including the requisite elements of Duke's negligent infliction claim, the County cannot complain now that Duke failed to establish those elements. With the County admitting full liabil-

ity for the inmate's acts, Duke's counsel had no reason or motive to prove the elements of negligent infliction to the jury, especially after the County's counsel expressly told him "you do not [need to]."

Furthermore, the acts of the escaped inmate were unquestionably extreme and outrageous within the meaning of Restatement § 46, *see Pankratz,* and are imputed to the County by its own admissions, whether or not the County's conduct was intentional or negligent. *See Harsh Building Co. v. Bialac,* 22 Ariz.App. 591, 529 P.2d 1185 (1975) (parties ordinarily bound by their stipulations). Requiring Duke to prove physical injury in order to recover for emotional distress would, in effect, relieve the County of its admitted liability for "*all* fault and liability" attributable to the escapee. We therefore reverse the trial court's grant of judgment n.o.v. and reinstate the jury's verdict awarding Duke damages for emotional distress.

## Rule 68 Sanctions

■ Pursuant to Ariz.R.Civ.P. 68(d), the trial court may impose sanctions against a party who does not accept an offer of judgment under the following circumstances:

> If the judgment finally obtained is equal to, or more favorable to the offeror than, the offer, the offeree must pay, as a sanction, those reasonable expert witness fees and double the taxable costs of the offeror ... incurred after the making of the offer, and prejudgment interest on unliquidated claims to accrue from the date of the offer.

In March 1994, appellants collectively offered to confess judgment for a sum of $2 million, an offer the County refused. After the jury returned its verdicts for a combined $3.55

million, appellants timely submitted proof to the trial court of their offer and requested sanctions pursuant to Rule 68, which the trial court awarded.[2] On cross-appeal, the County contends the trial court erred in awarding sanctions, arguing that unapportioned joint offers comprising multiple parties or claims are invalid for purposes of Rule 68. We agree.

Appellants made a single, unapportioned, lump sum offer for $2 million to compensate three claimants presenting one joint claim for wrongful death and two individual claims for emotional distress and false imprisonment. While Arizona courts have not addressed the validity of multiple party, multiple claim offers under Rule 68, other states with offer-of-judgment provisions comparable to Arizona's have held unapportioned joint offers to be invalid for purposes of sanctions.

In *Ramadanis v. Stupak,* 104 Nev. 57, 59, 752 P.2d 767, 768 (1988), Nevada's supreme court found invalid an offer made by a single defendant to multiple plaintiffs pursuant to that state's offer of judgment rule,[3] reasoning that "where an offer is made jointly to all plaintiffs and does not apportion the offer among plaintiffs, it is 'impossible to say that any plaintiff received a less favorable result than he would have under the offer of compromise.'" (Quoting *Randles v. Lowry,* 4 Cal.App.3d 68, 74, 84 Cal.Rptr. 321, 325 (1970).) This rule was thereafter extended to unapportioned joint offers made by multiple plaintiffs to one defendant in *Morgan v. Demille,* 106 Nev. 671, 799 P.2d 561 (1990). In doing so, the court relied on *Hurlbut v. Sonora Community Hospital,* 207 Cal. App.3d 388, 410, 254 Cal.Rptr. 840, 852–53 (1989),[4] in which the California Court of Appeals stated:

> money or property or to the effect specified in the offer.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall not recover costs, nor attorneys' fees, but shall pay the costs and attorneys' fees ... of the party making the offer from the time of the offer."

**2.** Subsequently, the trial court reduced the aggregate judgment to $1.75 million. The County moved for reconsideration of the sanctions in view of the reduction, and the motion was denied. On cross-appeal, the County contends this was error. Because we reverse the imposition of sanctions on other grounds, we need not address this issue on appeal.

**3.** Rule 68, Nevada Rules of Civil Procedure, as amended in 1988, provides in pertinent part: "[A]ny party may serve upon the adverse party an offer to allow judgment to be entered for the

**4.** The court in *Hurlbut* construed California's offer of judgment rule, which provided at the time in pertinent part: "[A]ny party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accor-

To consider plaintiffs' joint settlement offer as valid would deprive defendant of the opportunity to evaluate the likelihood of each party receiving a more favorable verdict at trial. Such an offer makes it impossible to make such a determination after verdict.

See also *Bergmann v. Boyce*, 109 Nev. 670, 856 P.2d 560 (1993). For the same reason, courts in other jurisdictions as well have refused to validate joint offers under rules similar to Arizona's. *See Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937 (Alaska 1983); *Taylor v. Clark*, 883 P.2d 569 (Colo.App.1994); *Gilbert v. City of Caldwell*, 112 Idaho 386, 732 P.2d 355 (App.1987); *True v. T & W Textile Machinery, Inc.*, 112 N.C.App. 358, 435 S.E.2d 551 (1993), *aff'd*, 337 N.C. 798, 448 S.E.2d 514 (1994); *D'Huyvetter v. A.O. Smith Harvestore Products*, 164 Wis.2d 306, 475 N.W.2d 587 (App.1991).

We find these cases persuasive. An offeree presented with an unapportioned joint offer cannot make a meaningful choice between accepting the offer on any single claim or continuing the litigation to judgment on all claims. Imposing sanctions for failing to accept what is in effect an unspecified and unapportioned offer of judgment deprives the offeree of the opportunity to assess his or her chances of doing better at trial against one or more of the parties covered by the joint offer. On the other hand, requiring joint offers to be specifically allocated between multiple parties or claims places no greater burden on the party making the offer.

■ Appellants point out that Rule 68 does not proscribe either joint offers or offers of a single amount for multiple claims. However, in providing that "any party may serve upon the adverse party an offer to

allow judgment to be entered in the action in accordance with the terms and conditions specified in the *offer*," the rule speaks in the singular. (Emphasis added.) When the language of a statute or rule is unambiguous and unequivocal, it is determinative of the statute's construction. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 870 P.2d 1188 (App.1993). Moreover, comparable rules from Alaska, California, Colorado, Idaho, Nevada, North Carolina, and Wisconsin, which also speak in the singular, have been construed uniformly to render unapportioned joint offers invalid.

Appellants also point out that a wrongful death action on behalf of multiple beneficiaries constitutes one claim for damages with one plaintiff and one judgment, citing *Begay v. City of Tucson*, 148 Ariz. 505, 715 P.2d 758 (1986). Even so, Duke's offer failed to apportion the amounts sought on her multiple claims for wrongful death, emotional distress, and false imprisonment, making it impossible for the County to assess its chances of doing better at trial against each claim. Appellants fail to cite any cases, nor are we aware of any, upholding unapportioned multiple claim offers under circumstances analogous to this case.[5] We thus conclude that the better rule is to hold unapportioned joint offers of judgment invalid for purposes of imposing sanctions under Rule 68(d), regardless of the outcome at trial.

### Disposition

The trial court's order vacating the verdict awarding damages for Mary Duke's emotional distress and granting judgment n.o.v. in favor of the County is reversed and the action is remanded to the trial court with orders to reinstate the jury's verdict on that claim and enter judgment accordingly. We vacate the sanctions imposed against the

---

dance with the terms and conditions stated at that time.... If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses...." West's Cal. Civ. Pro.Code § 998 (1977).

**5.** Appellants cite three cases purportedly upholding the validity of joint offers, but each is inapposite. In *Johnson v. Pratt & Whitney Canada, Inc.*,

28 Cal.App.4th 613, 34 Cal.Rptr.2d 26 (1994), the court found a joint offer valid because the judgment in favor of multiple heirs had to be in the form of a single lump sum. In *Askew v. Gerace*, 851 P.2d 199 (Colo.App.1992), one of two plaintiffs voluntarily dismissed her claim, and the court found the defendant's offer made jointly to the two plaintiffs valid against the remaining plaintiff. Finally, *Tippie v. Delisle*, 55 Wash.App. 417, 777 P.2d 1080 (1989), did not involve a joint offer.

County pursuant to Rule 68, Ariz. R. Civ. P. In all other respects, the judgment is affirmed.

HATHAWAY and PELANDER, JJ., concur.