132 P.3d 1197

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Trista CONNOLLY, a minor, by and through her parents Jewel and Michael CONNOLLY, and Jewel and Michael Connolly, wife and husband, Defendants–Appellees.**

No. 1 CA–CV 05–0400.

Court of Appeals of Arizona,
Division 1, Department A.

May 4, 2006.

Jones, Skelton & Hochuli, P.L.C. By Ronald W. Collett, Randall H. Warner, Phoenix, Attorneys for Plaintiff–Appellant.

Matthew L. Riggs, P.C. By Matthew L. Riggs, Mesa, Attorney for Defendants–Appellees.

## OPINION

IRVINE, Presiding Judge.

¶ 1 State Farm Mutual Automobile Insurance Company ("State Farm") appeals the trial court's summary judgment in favor of Trista Connolly, a minor, by and through her parents Jewel and Michael Connolly ("Trista"), in this declaratory judgment action. Because we conclude that Trista's claim for negligent infliction of emotional distress arising from the death of her sister in a car accident is not subject to the same "Each Person" policy limits as her parents' wrongful death claim, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The facts are undisputed. Dana Connolly was fatally injured after being struck by a pickup truck driven by Billy Breedlove. Trista, Dana's sister, was nearby and witnessed the accident. Trista, through her parents, asserts a claim for negligent infliction of emotional distress based on the emotional injury she sustained from witnessing her sister's death.

¶ 3 State Farm insured Breedlove under an automobile liability policy with limits of $50,000 per person and $100,000 per occurrence. State Farm paid $50,000 to Jewel and Michael Connolly for the wrongful death of their daughter, Dana, but denies that Trista is entitled to an additional $50,000. State Farm contends that Trista's negligent infliction of emotional distress claim is subject to the same per-person policy limits as her parents' wrongful death claim. State Farm filed a declaratory judgment action to resolve the coverage issue, and the parties submitted the dispute to the trial court on cross-motions for summary judgment. The trial court granted judgment in favor of Trista, and State Farm timely appealed.

## DISCUSSION

¶ 4 Interpretation of an insurance contract is a question of law which we review de novo. *Benevides v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 184 Ariz. 610, 613, 911 P.2d 616, 619 (App.1995). We construe provisions in insurance contracts according to their plain and ordinary meaning whenever possible. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). If a clause is susceptible to different constructions, we attempt to discern the meaning of the clause "by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole." *See Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 186, 939 P.2d 1337, 1339 (1997). If all else fails, and the clause remains ambiguous, the insurance policy will be construed to provide coverage. *See Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 325, 842 P.2d 1335, 1338 (App.1992).

¶ 5 The policy at issue requires State Farm to pay "damages which an *insured* becomes legally liable to pay because of *bodily injury to others* ... caused by accident resulting from the ownership, maintenance or use of *your car* " (emphasis in original). The policy defines "bodily injury" (somewhat circularly) as "bodily injury to a *person* and sickness, disease or death which results from it" (emphasis in original). The policy further states as follows:

> The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability—Coverage A— Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* *"Bodily Injury* to one *person* " includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to *bodily injury* to two or more *persons* in the same accident (emphasis in original).

¶ 6 Trista contends that the policy language makes derivative claims arising from one person's bodily injuries subject to

the "Each Person" limit, while providing separate "Each Person" policy limits, up to the aggregate amount of the "Each Accident" policy limits ($100,000), to non-derivative claims asserted by other parties injured by the same accident. Our cases generally have held that "derivative" claims, such as loss of consortium, that arise from an injury or death to another person, are subject to the "Each Person" coverage limits of an automobile liability policy, with the amount paid to be pro-rated among all of the claimants. *See, e.g., Herring v. Lumbermen's Mut. Cas. Co.,* 144 Ariz. 254, 697 P.2d 337 (1985) (holding that three minor children had no claim against the decedent's uninsured motorist coverage for the difference between the $5,000 they each received under the tortfeasor's policy, and the $15,000 minimum coverage limit required by law); *Campbell v. Farmers Ins. Co. of Ariz.,* 155 Ariz. 102, 104–07, 745 P.2d 160, 162–65 (App.1987) (compiling cases from other jurisdictions and holding that surviving spouse's and children's "derivative" loss of consortium claims were subject to the "each person" limit of underinsured coverage, rather than the "each accident" limit). Claims by separate victims for their independent, separate injuries are paid separately to each up to the total amount of coverage set forth in the "Each Accident" coverage limits.

¶ 7 Our cases have not considered whether a negligent infliction of emotional distress claim such as the one Trista asserts is a "derivative" claim, or is an independent injury to another victim. Trista contends, and the trial court agreed, that her negligent infliction of emotional distress claim is not a derivative claim, and therefore is not subject to the "Each Person" policy limits.

¶ 8 State Farm states the issue somewhat differently, arguing that regardless whether Trista's negligent infliction of emotional distress claim "stands alone" or is considered "derivative," the policy language makes the claim subject to the "Each Person" limits because Trista's claim could not exist but for Dana's injury and death. State Farm asserts that the claim falls squarely within the policy language stating that the "Each Person" limits apply to "all damages *due to* bodily injury to one person," which "includes all injury and damages to others *resulting from* this bodily injury" (emphasis added). State Farm emphasizes the importance of the phrases "due to" and "resulting from," asserting that because Trista's "injury and damages" resulted from witnessing Dana's bodily injury, Trista's claim is for "damages *due to* bodily injury to one person [Dana]" and is included in the policy limits for "injury and damages to others *resulting from* [Dana's] bodily injury." State Farm contends that the policy essentially requires a causal test: if one person's injuries could not exist but for bodily injury to another, that person's claim is subject to the "Each Person" policy limits ($50,000).

¶ 9 We agree that coverage depends on the intent of the contract, as determined by the policy language, not on whether a claim is labeled "derivative" or "independent." For example, under South Carolina law, loss of consortium is considered an independent, not a derivative, cause of action. *Stewart v. State Farm Mut. Auto. Ins. Co.,* 341 S.C. 143, 533 S.E.2d 597, 604 (2000). Nevertheless, the South Carolina Court of Appeals held, as have most courts, that a State Farm automobile insurance policy's "Each Person" liability limits applied to both the husband's injuries and the wife's "consequential damages" for loss of consortium. *Id.* at 602, 604–05. The court explained:

> The crux of coverage is not the separateness of a loss of consortium claim. Instead, the key is the consequential or direct nature of the damages sought. Where the claim is for consequential damages resulting from the bodily injuries suffered by the other spouse, rather than direct emotional or physical injury inflicted by the tortfeasor, the damage claim is covered by the single "per person" limit applicable to the claim for bodily injury giving rise to the consequential damages.

*Id.* We agree with the approach taken by the court in *Stewart*—the language of the policy and the nature of the damages sought are paramount, not the label of the claim as "derivative" or "independent." It is thus critical to understand exactly what claim is being asserted before attempting to interpret

the policy language to determine what policy limits apply.

¶ 10 To state a negligent infliction of emotional distress claim arising from witnessing another person's injury or death, a plaintiff must establish that she was within the "zone of danger," and "must prove physical injury resulting from the shock of witnessing injury to a closely related person." *Duke v. Cochise County,* 189 Ariz. 35, 38, 938 P.2d 84, 87 (App.1996); *see also Keck v. Jackson,* 122 Ariz. 114, 115–16, 593 P.2d 668, 669–70 (1979). State Farm does not argue that Trista has not properly stated a negligent infliction of emotional distress claim. Consequently, State Farm has conceded that Trista was within the zone of danger when Dana was struck. Moreover, State Farm concedes that Trista's emotional distress "could constitute 'bodily injury' covered under the policy." Thus, the only issue raised by this appeal is whether Trista's bodily injury claim based on negligent infliction of emotional distress is subject to the "Each Person" coverage limits applicable to Dana's claim, or qualifies as a separate claim on behalf of a second victim, under the higher "Each Accident" coverage limits. This is an issue of first impression in Arizona.

¶ 11 Cases from other jurisdictions have addressed this issue with differing results. In a frequently cited case, the Supreme Court of Louisiana interpreted a State Farm automobile insurance policy that was identical in relevant part to the one at issue in this case and held that a wife's claim for "mental anguish" constitutes a separate "bodily injury" within the meaning of the policy, and is not subject to the single person policy limits. *See Crabtree v. State Farm Ins. Co.,* 632 So.2d 736, 738 (brief statement of holding), 739 (policy language quoted) (La.1994). In *Crabtree,* Stephen Crabtree was riding his motorcycle while his wife, Debra, followed him in her car. Debra watched as an oncoming car crossed the center line and hit Stephen head on. One of Stephen's legs was almost completely severed below the knee.

*Id.* at 738. The State Farm policy at issue provided coverage in the amount of $25,000 per person, and $50,000 per accident. State Farm paid Stephen the $25,000 single person policy limits, but denied Debra's claim for an additional $25,000 for her mental anguish claim.[1] The Crabtrees sued State Farm, seeking coverage for the mental anguish claim.

¶ 12 In *Crabtree,* State Farm appears to have made the same argument it makes in this case—because the plaintiff's mental anguish "results from" or "derives from" witnessing the bodily injury to another person, the negligent infliction of emotional distress claim must be included in the "Each Person" coverage limits for "all injury and damages to others resulting from this *bodily injury* [to the other person]." The Louisiana court rejected this argument, concluding that Debra's mental anguish constituted a separate "bodily injury" within the meaning of the policy, and that even if Debra's bodily injury "derived from" or "resulted from" Stephen's bodily injuries within the meaning of the policy language, the "Each Person" limits did not apply. The court explained:

> Under State Farm's construction, all injuries including *bodily* injuries which "result from" another's bodily injury would be subject to the single per person limit while all other bodily injuries would be covered under the aggregate per accident limit. Thus, if an oncoming car hit Mr. Crabtree while he was driving with Mrs. Crabtree, and the injury to him caused him to drive off the road and hit a tree resulting in external, physical injury to Mrs. Crabtree, the latter's injury, under State Farm's interpretation, would "result from" the former's injury and therefore fall under the single bodily injury limit.

*Crabtree,* 632 So.2d at 742 (emphasis in original). The court stated that such a result would be "absurd," and would essentially disregard the policy language defining the aggregate coverage for "Each Accident" as "all

---

1.  Unlike an Arizona negligent infliction of emotional distress claim, the Louisiana statute in effect at the time did not require the plaintiff to demonstrate "physical injury" resulting from the shock of witnessing the injury to another; it

required only "severe, debilitating, and foreseeable" anguish or emotional distress. *See* La. Civ.Code art. 2315.6, quoted in *Crabtree,* 632 So.2d at 738 n. 2.

damages due to *bodily injury* to two or more persons in the same accident." *Id.* (emphasis in original). Thus, the court concluded that "the policy language defining 'bodily injury to one person' to include 'all *injury* and damages to others resulting from this bodily injury' does not reasonably encompass *bodily* injury to others under the single person limit." *Id.*

¶ 13 The court further explained that the policy instead must mean that if only one person is injured, or if one person suffers bodily injury and others suffer injury and damages that are not "bodily injury," then the "Each Person" coverage limits apply to all of the damages. But if two or more persons suffer *bodily* injury in the same accident, the aggregate "Each Accident" coverage applies, "even if one or more persons' bodily injury 'results from' another's bodily injury." *Id.*[2]

¶ 14 The Supreme Court of Montana took a similar approach in *Treichel v. State Farm Mutual Automobile Insurance. Co.,* 280 Mont. 443, 930 P.2d 661 (1997). In that case, Carolyn Treichel and her husband Fredie were riding their bicycles when a car struck Fredie from behind. Carolyn was riding behind Fredie and was not physically injured by the car, but she saw the car strike Fredie and throw him into the air. Fredie subsequently died from the injuries. *Treichel,* 930 P.2d at 662. State Farm insured the driver of the vehicle under an automobile policy identical in all material respects to the policy at issue in this case, and which provided bodily injury liability coverage of $25,000 for each person and $50,000 for each accident. *Id.* at 662–63. State Farm paid Fredie's estate $25,000 and denied Carolyn's claim for an additional $25,000 for emotional distress. Carolyn brought a declaratory judgment action seeking coverage, and as in this case, State Farm agreed that Carolyn met all of the elements necessary to prove a negligent

infliction of emotional distress claim. The only issue was whether the "Each Person" or the "Each Accident" limits applied to the negligent infliction of emotional distress claim. *Id.* at 663.

¶ 15 *Treichel* explained that emotional distress claims differ from "derivative" loss of consortium claims because the plaintiff is "on the scene," experiencing "personal ... direct physical and emotional impact." *Id.* at 665. "Carolyn was a separate person who received an independent and direct injury at the accident scene. Her serious and severe emotional distress was the reasonably foreseeable consequence of [the driver's] negligence." *Id.* Because Carolyn was "a second injured person in the accident," the "Each Accident" aggregate limits applied. *Id.*

¶ 16 The Supreme Court of Alaska has also considered policy language in a State Farm policy essentially identical to the policy at issue in this case. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Lawrence,* 26 P.3d 1074 (2001). In that case, the parents of a boy who was severely injured by a suicidal, speeding driver sought coverage under the "Each Accident" limits for their negligent infliction of emotional distress claims after State Farm had paid the "Each Person" limits for their son's claims. Adopting the approach set forth in *Crabtree,* the court explained that the "dispositive questions" in determining coverage "are whether the ... parents suffered 'bodily injury,' and whether such 'bodily injury' was suffered 'in the same accident' that injured their son." *Lawrence,* 26 P.3d at 1079. Finding that State Farm had waived its arguments regarding these dispositive issues, the court held that the parents' negligent infliction of emotional distress claims qualified for policy limits separate from the amounts paid for their son's claims. *Id.*

2. The court also concluded that Debra's mental anguish constitutes "bodily injury" within the meaning of the policy, distinguishing the mental distress at issue in the *Crabtree* case from the "purely emotional damages" that were found not to be a "bodily injury" in a prior case dealing with a loss of consortium claim. In Arizona, the negligent infliction of emotional distress claim requires Trista to prove "physical injury resulting from the shock of witnessing" the injury to her sister. *Duke,* 189 Ariz. at 38, 938 P.2d at 87; *Keck,* 122 Ariz. at 116, 593 P.2d at 670. We need not consider whether Trista's "physical injury" qualifies as a "bodily injury" within the meaning of the policy, because State Farm has conceded that Trista's emotional distress could constitute "bodily injury" under the policy.

¶ 17 State Farm contends that these cases are unpersuasive because they rely on the conclusion that negligent infliction of emotional distress involves a bodily injury, and disregard the fact that the injury "results from" another person's injury within the meaning of the policy language. State Farm cites several cases in support of its argument. For example, the Supreme Court of Connecticut, in *Galgano v. Metropolitan Property & Casualty Insurance Co.*, 267 Conn. 512, 838 A.2d 993 (2004), recently considered whether uninsured motorist benefits were available to compensate the insured for the emotional distress he suffered after witnessing an injury to his son. Both the tortfeasor's insurer and the victim's insurer had exhausted the per-person policy limits to compensate the son for his bodily injuries. The insured sued the insurers seeking coverage for his negligent infliction of emotional distress claims, alleging, as does Trista in this case, that a separate "Each Person" limit applied to his injuries. *Id.*

¶ 18 The policy at issue in *Galgano* provided:

> The maximum amount we'll pay for any one *motorcycle accident* for all claims by all persons for damages for bodily injury to any one person is the 'each person' Uninsured Motorist Coverage limit.... Subject to the limit for 'each person' the maximum amount we'll pay in damages for bodily injury to two or more persons, is the 'each accident' Uninsured Motorist Coverage limits shown in the declarations.

*Id.* at 994 (quoting policy language; emphasis in original). The court stated that under the "express terms of the policy, the bodily injury to the plaintiff's son includes *all* claims by all persons for damages for bodily injury resulting from the bodily injury to the plaintiff's son." *Id.* at 997–98. The court concluded that, "but for the bodily injury to his son, the plaintiff would not have suffered any emotional injuries," and thus the "measure of the plaintiff's recovery is not governed by the fact that his separate damages arose out of the same accident, but by the fact that they arose out of the same bodily injury to his son." *Id.* at 998.

¶ 19 The court also noted that "bystander emotional distress, like loss of consortium, is a third party cause of action," and held that the plaintiffs were thus seeking recovery "for emotional harms they suffered as a result of the defendants' tortious conduct committed against another." *Id.* at 998. In short, "but for" the injury to the other person, the plaintiffs would have no injury, and so the per-person policy limits applied.

¶ 20 State Farm cites several other cases which have followed the same reasoning to conclude that bystander emotional distress claims are not compensable under separate per-person policy limits from the victim who suffered the bodily injury that caused the emotional distress. *See, e.g., Mullen v. Walczak*, 262 Wis.2d 708, 664 N.W.2d 76, 82 (2003); *Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1333, 1336–37 (M.D.Fla.1998); *McNeill v. Metro. Prop. & Liab. Ins. Co.*, 420 Mass. 587, 650 N.E.2d 793, 795–96 (1995) (focusing on policy language stating that all damages "as a result of bodily injury to any one person" were subject to single per-person limits, court held that father's damages were suffered "as a result of" bodily injury to his daughter, and thus subject to single limit); *United Pac. Ins. Co. v. Edgecomb*, 41 Wash.App. 741, 706 P.2d 233, 234 (1985) (holding that father's emotional distress from witnessing his son's injury was "entirely dependent upon the injury to the child," and thus subject to same per-person policy limits).

¶ 21 We find the approach taken by the *Crabtree* line of cases to be more in line with the policy language at issue in this case, and with our understanding of negligent infliction of emotional distress claims as reflected in Arizona cases.

¶ 22 As explained in *Crabtree*, the language of the State Farm policy at issue states that the "Each Person" limits apply to "all damages due to *bodily injury* to one person," and then defines "bodily injury to one person" to include "all injury and damages to others resulting from this *bodily injury* " (emphasis in original). It does not define "bodily injury to one person" to include "all *bodily* injury and damages to others" (emphasis in original). The policy is thus reasonably under-

stood as providing the single "Each Person" coverage limit to compensate for bodily injuries suffered by one victim plus all non-bodily injuries and damages to other persons resulting from the bodily injury to the victim. In contrast, the "Each Accident" policy limits apply to "all damages due to *bodily* injury to two or more persons in the same accident" (emphasis in original). Thus, the policy is reasonably understood to mean that when two or more persons suffer a "bodily injury" as well as non-bodily injuries and consequential damages, the separate "Each Person" coverage limits apply to compensate each person for his or her respective bodily injuries (and to compensate others who suffer non-bodily injury or other damages resulting from those bodily injuries), up to the aggregate "Each Accident" coverage limits provided in the policy. We conclude that if two persons have suffered bodily injury in the same accident, the "Each Accident" provision applies, even if one person's bodily injury could be construed to "result from" the bodily injury to the other person.

¶ 23 This conclusion is supported by the fact that the plaintiff in a negligent infliction of emotional distress action must prove not just emotional distress, but a physical injury that results from the emotional distress. *Duke,* 189 Ariz. at 38, 938 P.2d at 87; *Keck,* 122 Ariz. at 116, 593 P.2d at 670. Significantly, Arizona cases require that the negligent infliction of emotional distress plaintiff must have been in the "zone of danger" to recover. *Id.* Thus, the successful plaintiff has been directly affected by the tortfeasor's negligence. Unlike a loss of consortium claim, in which the tortfeasor's injury to one person indirectly affects another person by affecting the emotional, physical, and/or financial relationship between the injured party and the plaintiff, a plaintiff who successfully asserts a negligent infliction of emotional distress claim has directly experienced the tortfeasor's negligence, and that negligence has caused the plaintiff to suffer such severe emotional distress that physical injury results. The tortfeasor did not merely affect the plaintiff by injuring someone close to the plaintiff, so the injury to the plaintiff is *not* solely due to the bodily injury to another person. Instead, the negligent infliction of

emotional distress plaintiff's injury is due to the unique experience of having witnessed, at such close range as to be in the "zone of danger," the event that caused the injury to the other person. In other words, the negligent infliction of emotional distress claimant's physical injury results from the accident, not solely from the injury to the other person. *Cf. Campbell v. Farmers Ins. Co.,* 155 Ariz. 102, 107, 745 P.2d 160, 165 (App. 1987) (explaining that loss of consortium claims based on things such as grief, anguish, loss of companionship, and loss of support do not qualify as a "bodily injury" within the meaning of underinsured motorist insurance because the injuries were not "sustained in the accident," but were "sustained as a result of the bodily injury or death suffered by the person actually involved in the accident.").

¶ 24 In short, if a person has a valid negligent infliction of emotional distress claim, she has suffered a "bodily injury" arising from the "same accident" as the other injured party. Additional bodily injuries resulting from the same accident are exactly what the "Each Accident" policy limits are designed to cover. State Farm does not contend that Trista's negligent infliction of emotional distress claim is invalid, and in fact concedes that she has suffered a "bodily injury" within the meaning of the policy. Under these circumstances, the trial court properly concluded that Trista is entitled to a separate "Each Person" coverage limit for her claim, up to the "Each Accident" aggregate policy limits.

¶ 25 Both parties request an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01, which allows recovery of reasonable attorneys' fees in an action arising out of a contract. After considering the relevant factors, and in our discretion, we grant Trista's request for reasonable attorneys' fees, upon her compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure. Trista, as the prevailing party, is also entitled to an award of taxable costs under A.R.S. § 12–341.

## CONCLUSION

¶ 26 For the foregoing reasons, we affirm the trial court's judgment in favor of Trista,

and grant her request for an award of reasonable attorneys' fees.

CONCURRING: LAWRENCE F. WINTHROP and JAMES B. SULT, Judges.