MARCIA L. RAMOS *et al.*, Plaintiffs-Appellants, v. RAM S. PANKAJ, Defendant-Appellee.

Fourth District No. 4—89—0999

Opinion filed September 20, 1990.

Roger B. Gomien, of Gomien, Root & Rigazio, of Morris, for appellants.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall and David R. Sinn, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

The plaintiffs Marcia and Robert Ramos appeal from a judgment

entered in favor of defendant Ram S. Pankaj, M.D., following a jury trial conducted in the circuit court of Livingston County. In this medical malpractice action, plaintiffs sought to recover damages resulting from the alleged failure of defendant to diagnose and properly treat a septic arthritic condition in Marcia's left hip.

Several issues are raised by plaintiffs on appeal. The first issue to be considered is whether the trial court erred in allowing extrajudicial information to be received by the jury from which information the jurors could arguably infer that plaintiffs had settled with a former co-defendant, U.K. Sinha. The information about which plaintiffs complain is the posting of a trial calendar in the courthouse which included a reference to Sinha as a defendant. The case relied on by plaintiffs in support of this position is *Gertz v. Bass* (1965), 59 Ill. App. 2d 180, 208 N.E.2d 113.

In *Gertz*, the court decided it was prejudicial error for the jury to obtain a dictionary which was not in evidence and which defined terms differently than did the jury instructions. The *Gertz* opinion also points out that only errors which are prejudicial to the rights of the complaining party require reversal. In the case at bar, plaintiffs have not established prejudice resulting from the posting of the court calendar.

It is pure speculation on the part of plaintiffs to conclude that if any of the jurors read the calendar or noticed the inclusion of Sinha as a defendant, the jury must have inferred plaintiffs settled with Sinha. The jury was instructed as follows:

> "It is your duty to determine the facts, and to determine them from the evidence produced in open court. You are to apply the law to the facts and in this way decide the case. Neither sympathy nor prejudice should influence you. Your verdict must be based on evidence and not upon speculation, guess or conjecture."

This court will not assume merely from the posting of a court calendar that the jurors flagrantly disregarded their duty.

Plaintiffs further argue that the posting of the court calendar was particularly prejudicial in light of the giving of defendant's instruction No. 8, which stated:

> "More than one person may be to blame for causing an injury. If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiffs, it is not a defense that some third party who is not a party to the suit may also have been to blame.
>
> However, if you decide that the sole proximate cause of in-

jury to the plaintiffs was the conduct of some person other than the defendant, then your verdict should be for the defendant."

This instruction was given over plaintiffs' objection and is based on Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1990) (IPI Civil 3d).

Plaintiffs' contention is that the second paragraph of this instruction should not have been given. The notes on use section following the IPI instruction indicates the second paragraph should only be used when evidence exists tending to show that conduct of a third person was the sole proximate cause of the occurrence, and further indicates the entire instruction is not to be given where the third person was acting as an agent of one of the parties. IPI Civil 3d No. 12.04, Notes on Use, at 12—9.

■ The jury was instructed that when physicians act "in concert" to treat a patient, then each physician is liable for the negligence of the other. This instruction, and the instruction defining "in concert," was submitted by plaintiff and is based on the decision in *Reed v. Bascon* (1988), 124 Ill. 2d 386, 530 N.E.2d 417. However, no instruction concerning agency was submitted by plaintiff. (See IPI Civil 3d Nos. 50.01 through 50.10.) Moreover, the fact that two doctors act "in concert" does not render one the agent of the other since one is not acting for or on behalf of the other. Had the agency theory applied, there would have been no need to develop the "in concert" theory of liability. In any event, had plaintiffs argued defendant's instruction No. 8 should also not be given when doctors are acting "in concert" such an argument would be without merit. After all, a jury might reasonably find the doctors were not acting in concert and that one and not the other was solely responsible for the injury. (See *Bascon*, 124 Ill. 2d 386, 530 N.E.2d 417.) Therefore, the giving of the instruction, as in the case at bar, does not create an inconsistency, but instead merely apprises the jurors of the law relative to the parties' respective theories of the case.

Nor does this court deem that the giving of defendant's instruction No. 8 inappropriately draws attention to the fact plaintiffs may have settled the case with Sinha. As a result, plaintiffs were not denied a fair trial because of the posting of the court calendar, independent of or in combination with the giving of defendant's instruction No. 8.

The next issue to consider is whether the jury was properly instructed on the issue of proximate cause. Plaintiffs complain the giving of defendant's instruction No. 9 was improper. That instruction stated:

"If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiffs, it is not a defense that something else may also have been a cause of the injury.

However, if you decide that the sole proximate cause of injury to the plaintiffs was something other than the conduct of the defendant, then your verdict should be for the defendant."
See IPI Civil 3d No. 12.05.

■ The purpose of jury instructions is to advise the jury of the correct principles of law to be applied to the evidence admitted at trial. While the trial court has considerable discretion in determining the form of the instruction to be given, the instructions given must be supported by some evidence in the record, they must correctly state the law, and they must not overemphasize any particular matter. (*Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 532 N.E.2d 1091.) Plaintiffs argue the evidence does not support the giving of this instruction since there is no evidence of an independent cause of the injury unrelated to the doctors' actions as in *Burge v. Morton* (1981), 99 Ill. App. 3d 266, 425 N.E.2d 539.

William B. Fischer, an orthopedic surgeon called as a witness on behalf of the plaintiffs, testified that in his opinion, "as early as August 30th, 1984, there was a high probability that Marcia Ramos was going to need a hip replacement." He also testified that "highly probable" meant there was an 80% or 90% chance it was going to happen. Pankaj testified he first saw the patient on August 30, 1984.

■ Plaintiffs nevertheless argue there is no evidence the bacterial invader was untreatable had a proper and timely diagnosis been made. However, the giving of the instruction is supported by (1) Fischer's testimony and (2) the fact that on September 3, 1984, Sinha and Pankaj performed an exploratory procedure to discover the cause of pain in Marcia's hip and thigh and found an area of infection in the area of the greater trochanter, with a pus pocket extending down the femur four or five inches. This area was cleaned, but the doctors did not proceed further to inspect the area around the top of a rod which had been inserted following a motorcycle accident that occurred 12 years previously. The reason the doctors did not proceed further is that the diagnostic procedures employed prior to the exploratory surgery did not indicate any problems around the top of the rod and the doctors did not want to risk creating any new problems. On September 21, 1984, a second exploratory surgery was performed after X rays taken the day before gave an indication of a septic hip. The procedure on September 21 was an arthrotomy and involved opening the

joint capsule to inspect. Fluids from the joint were tested at the lab and the lab reported finding no bacteria, but noted the presence of white blood cells. Thereafter, the patient was sent to St. Francis Hospital in Peoria, where Dr. Bernard Cahill removed the rod because of an infection he discovered at the top of the rod. He also noted that the infection had spread to the hip capsule. Cahill testified he expected the patient to develop arthritis because cartilage does not tolerate the enzymes of an infection.

Based on this evidence, a jury could reasonably find that the infection could well have involved the hip capsule even before the patient went to see defendant and that the failure to discover it in the first instance neither aggravated nor caused the damage to the hip capsule to any greater extent than already existed, such that Marcia would have required hip-replacement surgery even had Doctors Sinha and Pankaj discovered the infected area around the rod on September 3, 1984. Based on these facts, then, it was not error for the trial court to give an instruction premised on IPI Civil 3d No. 12.05.

The remaining issue to consider is whether the conduct of defendant's counsel deprived plaintiffs of a fair trial. Plaintiffs complain of the following conduct: (1) defendant's counsel cross-examined Marcia as to whether she made a claim against the driver of an automobile which struck the motorcycle on which she was riding in 1972, after which incident the rod was inserted in her hip; (2) defendant's counsel, on three occasions, improperly attempted to impeach Marcia with her deposition testimony which was not inconsistent with her testimony at trial; (3) defendant's counsel attempted to imply that Fischer misidentified "Naprocyn [sic]" as an antibiotic in his discovery deposition even though both parties were aware that the reference to Naprosyn in the deposition was a stenographer's error, and that Fischer had corrected the deposition transcript before trial to refer to "Nafcillin"; (4) during closing argument, defense counsel advised the jury that plaintiffs had asked the court to give instructions concerning concerted action; and (5) defendant's closing argument also includes the following references to defendant:

"This doctor knows he wasn't wrong and if at times he seemed a little strident or at times if you thought that he was trying maybe a little too hard to get his point across to you, can you imagine what our grandfathers would have done if they had been hauled into court 100 years ago when they got off the boat and their German wasn't too good and maybe their Swedish wasn't, by golly, too good?

Wouldn't it be a little scary for somebody in that circum-

stances who can't dance around with the language to be in this game of, war of words? Wouldn't that be a little frightening.?"

●5 With regard to counsel's reference to defendant's mastery of the English language, plaintiffs argue it is merely an appeal to the passion and sympathy of the jury designed to prejudice plaintiffs. Not only have plaintiffs waived this issue for purposes of appeal by failing to object (*Loitz*, 177 Ill. App. 3d 1034, 532 N.E.2d 1091; *Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 479 N.E.2d 1091), but on the merits this court does not find anything improper about the reference. In *Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 381 N.E.2d 383, the only case cited by plaintiffs in support of this contention, the court was concerned with digressions which cast aspersions on the honesty of the opposing side. Such is not the case here. Defendant's argument was not designed to embarrass or belittle plaintiffs or their counsel.

With regard to the examination of Fischer, plaintiffs did not object, but on redirect examination by plaintiffs' counsel, the matter was clarified. As to nearly all the other conduct of defendant's counsel which plaintiffs argue deprived them of a fair trial, objections were sustained and the jury was instructed to disregard the question, the reference to the deposition, or the offending portion of counsel's argument.

■■ ■ As this court noted in *Loitz*, where the defendant complained of having to object 71 times during trial:

"Where defendant has objected, the objection was sustained and a motion to strike granted, or such other relief granted on the defendant's motion, then defendant really has nothing about which to complain. *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 451 N.E.2d 1313.

A party is not entitled to an absolutely error-free trial, as long as the trial, as a whole, was fair. (*Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.) A trial judge is accorded wide latitude in conducting a trial. (*Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 398 N.E.2d 188.) Considering the length of the trial, the complexity of the issues, and the fact that defendant was allowed much of the relief it sought during the trial, it is hard to believe defendant could have had a fairer trial." *Loitz*, 177 Ill. App. 3d at 1060, 532 N.E.2d at 1107.

■■ Regarding the examination of Fischer, it is possible defendant's trial counsel merely overlooked the correction to the deposition, and when the matter was later clarified, no prejudice to plaintiffs

could have occurred. Similarly, when defendant's counsel attempted to question Marcia about any demand she made against the driver of the automobile, the objection interrupted the question, no answer was given by the witness, and the jury was instructed to disregard the question. Plaintiffs did not move for a mistrial on the ground that the inference that the witness was "a professional witness" was so prejudicial that, in spite of sustaining the objection, plaintiffs could not have received a fair trial.

 Nor does defendant's counsel's reference to the fact plaintiffs requested the judge instruct the jury concerning doctors acting in concert warrant a reversal. While the comment was unnecessary and certainly inappropriate, plaintiffs have failed to explain satisfactorily how they were prejudiced by the comment in view of the trial court sustaining the objection. Plaintiffs did not request that the references be stricken or that the jury be instructed to disregard the statement. Nor did plaintiffs request that a mistrial be declared. Furthermore, the judge instructed the jury as the plaintiffs requested. There is nothing in the record from which this court could find the jury chose to ignore the instructions of the court because they were offered by plaintiffs.

 Finally, we consider the three unsuccessful attempts to impeach Marcia with her discovery deposition. There is nothing in the record which indicates counsel's efforts were not good-faith attempts at impeachment. If defendant's counsel believes there was a prior inconsistent statement, counsel may raise that issue and have a ruling in the event plaintiffs object. Plaintiffs complain that such attempts were "repeated." While counsel cannot continue examining a witness in a manner or with regard to a subject matter to which an objection has already been sustained, plaintiffs have failed to establish that the trial court's initial rulings should be interpreted as precluding subsequent attempts at impeachment regarding different subject matters.

 Plaintiffs rely on the opinion in *L.D. Brinkman & Co.-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 394 N.E.2d 1221, and *Green v. Cook County Hospital* (1987), 156 Ill. App. 3d 826, 510 N.E.2d 3. In *L.D. Brinkman*, the court decided error had occurred because counsel, in examining the witness, laid the foundation for impeachment by prior inconsistent statements, but failed to offer into evidence the prior inconsistent statements. Had such action on the part of defendant's counsel occurred here, it too would be error. However, the allegedly impeaching statements were presented in open court and the judge ruled they were not impeaching, directing the jury to disregard them. In *Green*, counsel laid a foundation to im-

peach by establishing functions the plaintiff could not perform if injured as claimed, but counsel failed to prove plaintiff had performed such activities. Again, *Green* is distinguishable because the case at bar does not involve an incomplete impeachment where counsel has attacked a witness' credibility but failed to follow up with proof. Here the attempt at impeachment was complete, but the attack on the witness' credibility was unsuccessful because the prior statements were not inconsistent with the court testimony. Plaintiffs received a fair trial.

For the foregoing reasons, the judgment of the circuit court of Livingston County is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.