908 P.2d 1

**Janeen YOUNG, Through her Conservator and Guardian, Noreen YOUNG, and Charles Young and Noreen Young, individually, Plaintiffs/Appellants,**

v.

**DFW CORPORATION dba Keegan's Grill and Taproom, Defendant/Appellee.**

No. 2 CA–CV 94–0103.

Court of Appeals of Arizona, Division 2, Department B.

April 4, 1995.

Review Denied Dec. 21, 1995.*

Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm and Steven D. Copple, Phoenix, for plaintiffs/appellants.

Ridenour, Swenson, Cleere & Evans, P.C. by James W. Evans, Robert R. Beltz and John T. Moshier, Phoenix, for defendant/appellee.

## OPINION

DRUKE, Chief Judge.

Janeen Young was severely injured when a vehicle driven by Jennifer Jacobi struck Young's car head-on. More than an hour after the accident, Jacobi's blood alcohol concentration was .20 percent. Earlier that evening, Jacobi consumed various alcoholic beverages in a four-hour period during an office party at Keegan's Grill and Taproom. Young, along with her parents (collectively "Young"), sued Keegan's through its corporate owner, DFW Corporation (hereafter "Keegan's"), alleging that the negligence of Keegan's in serving alcohol to Jacobi while she was intoxicated was a proximate cause of the accident. Young appeals from a defense verdict, challenging the constitutionality of A.R.S. § 4–312(B). Young claims that the statute violates article 18, section 6 of the Arizona Constitution because it abrogates the general negligence cause of action enunciated by our supreme court in *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). We agree that section 4–312(B) is unconstitutional and reverse.

In *Ontiveros*, the court abolished the common law doctrine of tavern owner nonliability, stating that "those who furnish liquor have an obligation or 'duty' to exercise care for the protection of others." *Id.* at 511, 667 P.2d at 211. The court held that the general rules of liability applicable to all other persons in Arizona should apply to licensed sellers of alcohol and that they "may be held liable when they sell liquor to an intoxicated patron or customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others who may

* Martone, J., of the Supreme Court, voted to grant     the petition for review.

be injured either on or off the premises." *Id.* at 513, 667 P.2d at 213.

The Arizona legislature subsequently enacted two statutes relevant to this appeal. The first, A.R.S. § 4–311, establishes dram shop liability if:

> 1. The licensee sold spirituous liquor ... to a purchaser who was obviously intoxicated ..., and
>
> 2. The purchaser consumed the spirituous liquor sold by the licensee, and
>
> 3. The consumption of spirituous liquor was a proximate cause of the injury, death or property damage.

Subsection C of section 4–311 defines "obviously intoxicated" as "inebriated to such an extent that a person's physical faculties are substantially impaired and the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction, that would have been obvious to a reasonable person."

The other relevant statute, A.R.S. § 4–312(B), limits dram shop liability to section 4–311 by providing:

> [E]xcept as provided in § 4–311, a person, firm, corporation or licensee is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor.

Relying on section 4–312(B), Keegan's requested prior to trial that the court limit Young to proving dram shop liability through section 4–311, arguing that Young's claim could not succeed on the general negligence principles set forth in *Ontiveros*, but only upon proof that Keegan's served Jacobi while she was "obviously intoxicated" as defined by section 4–311(C). The court agreed that, pursuant to section 4–312(B), section 4–311 provided the exclusive remedy for dram shop liability. Accordingly, it refused Young's requested general negligence instruction and instructed the jury, pursuant to section 4–311(C), that Keegan's could be liable only if it served alcohol to Jacobi while she was "substantially impaired" as shown by "significantly uncoordinated physical action or signifi-

cant physical dysfunction, that would have been obvious to a reasonable person."

On appeal, Young contends that inasmuch as section 4–312(B) limits dram shop liability to section 4–311, section 4–312(B) unconstitutionally abrogates the general negligence claim of dram shop liability recognized in *Ontiveros*. Although Keegan's does not dispute that the statutory scheme alters *Ontiveros'* evidentiary requirements for dram shop liability, it nevertheless argues that section 4–311 merely regulates the standard of care and thus does not abrogate the general negligence cause of action. We disagree.

Article 18, section 6 of the Arizona Constitution provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Our supreme court has adopted a test of "reasonable alternatives" for distinguishing between legislative regulation and abrogation.

> The legislature may regulate the cause of action for negligence so long as it leaves a claimant reasonable alternatives or choices which will enable him or her to bring the action. It may not, under the guise of "regulation," so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action.

*Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984). At issue in *Barrio* was the constitutionality of a medical malpractice limitations statute that required a minor injured before age seven to sue for the injuries before age ten. Our supreme court found that because the statute required a minor to bring suit before age ten, regardless of the minor's ability to do so and without concern for the inclinations of his or her adult caretakers, the statute did not provide reasonable alternatives and was therefore unconstitutional.

The court applied the *Barrio* test in *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 730 P.2d 186 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987), and found unconstitutional a defamation statute that allowed a jury to award special but not general damages against a media defendant that had published a retraction. "[B]y peremptory instruction [in accordance with

the statutory scheme], plaintiffs were prohibited from recovering damages for emotional distress and ... loss of reputation." *Id.*, 152 Ariz. at 12, 730 P.2d at 189. Because the statutory scheme limited damages to injury to plaintiff's trade, profession, business, or occupation, the supreme court agreed with the court of appeals that it created "insurmountable hurdles for large and foreseeable classes of victims" and concluded that the scheme "completely deprive[d] many who have sustained real injury of judicial remedy." *Id.* at 18–19, 730 P.2d at 195–96.

Likewise, in *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993), the court found unconstitutional a statute of repose that barred product liability actions for injuries occurring more than 12 years after the product was first sold. Rejecting the argument that the statute merely regulated the right to recover damages because plaintiffs could proceed on warranty or negligence theories, the court reasoned that the right to sue in negligence or express warranty is not a reasonable alternative to a strict product liability action inasmuch as the action arose when other theories of recovery proved inadequate to protect injured users and consumers.

As in *Barrio, Boswell,* and *Hazine,* we find that, because section 4–312(B) limits dram shop liability to that found in section 4–311, section 4–312(B) deprives at least one foreseeable class of plaintiffs injured by intoxicated drivers a reasonable alternative to the general negligence action for dram shop liability recognized in *Ontiveros.* That class includes plaintiffs injured by intoxicated drivers who are not obviously intoxicated as defined by section 4–311(C), but who have consumed a sufficient number of alcoholic drinks that the licensee knows or should know that they are intoxicated.

That description, at least from one view of the evidence in this case, appears to fit Jacobi. Three toxicologists testified that, given her weight of approximately 125 pounds and her .20 blood alcohol concentration after the accident, Jacobi had to have consumed the equivalent of nine to ten drinks in a four-hour period that evening. While the defense suggested that Jacobi might have consumed more alcohol after leaving Keegan's and before the accident, there was direct testimony that while she was at Keegan's, she consumed the equivalent of at least six drinks, two of which were straight shots of alcohol. A bartender who was on duty the night of the accident testified that he would not expect a 125–pound woman to drink more than six beers in a four-hour period without becoming intoxicated. Keegan's employees also testified that the bar was not particularly crowded on the night of the accident so as to have prevented them from observing either Jacobi's behavior or her consumption of alcohol.

Nonetheless, the employees and most of Jacobi's coworkers at the office party testified that she had exhibited no obvious signs of intoxication such as staggering or slurred speech. In fact, one of her coworkers testified that even though he believed Jacobi was intoxicated because he knew her and she was acting out of character, he agreed that if he had not known her, it was a "coin toss" as to whether she was "very, very social" or had "had a few drinks." Likewise, the officers who investigated the accident testified that, other than a slight sway one of them noted, Jacobi did not display any obvious physical symptoms of intoxication despite her registering a .20 on the breathalyzer.

Thus, even though from the circumstances, including Jacobi's size and the number of drinks she had consumed, Young might have established a general negligence claim that Keegan's knew or should have known that Jacobi was legally intoxicated, section 4–312(B) as applied here precluded a finding of liability against Keegan's because Young was unable to establish that Jacobi was "obviously intoxicated" as defined by section 4–311(C). For the same reason, licensee liability would also be precluded in the following hypothetical situation Young posits on appeal:

> At 5:00 p.m. a man enters a Phoenix bar. He has not consumed any alcohol that day and has an average tolerance. He's the only patron in the bar. He sits at the bar and orders and consumes eight shots of 100 proof alcohol in ten minutes. Each shot is prepared by the same bartender who watches the patron drink every shot. At 5:10 p.m., the patron pays his tab and tells the bartender he is going to get into his car and drive home to Tucson. During

his entire ten minute stay at the bar, the patron manifests no obvious signs of intoxication as required by A.R.S. § 4–311(C). The bartender makes no attempt to stop him. At 5:30 p.m., the patron crashes his car into an innocent third party and the only cause was his gross intoxication.

Keegan's nevertheless argues that any error in the instruction as given was harmless under the circumstances. We disagree, finding that the instruction's restrictive definition of "obvious intoxication" is "the type of instruction an attorney could single out and argue extensively before a jury, and no one would be in a position to say just what effect it might have." *Brooker v. Canny,* 103 Ariz. 529, 532, 446 P.2d 929, 932 (1968). In fact, although closing arguments were not made a part of the record on appeal, defense counsel provided the jurors with the statutory definition of "obvious intoxication" during his opening statement and advised them to keep it in mind while listening to the evidence. While the jury might have determined that Jacobi's conduct and appearance did not rise to the level of significantly uncoordinated physical action or significant physical dysfunction, we cannot say that the evidence was insufficient for it to have determined that Keegan's should have known she was intoxicated.[1]

For the foregoing reasons, we conclude that section 4–312(B) fails to afford plaintiffs such as Young a reasonable alternative to the general negligence action recognized in *Ontiveros* when they are injured by a driver that the licensee knows or should know is intoxicated, but the driver is not "obviously intoxicated" as defined by section 4–311(C). By limiting licensee liability to section 4–311, section 4–312(B) does not merely "regulat[e] the mode, method, and procedure to be followed in pursuing the cause of action … [but] completely deprive[s] many who have sustained real injury of judicial remedy," *Boswell,* 152 Ariz. at 19, 730 P.2d at 196, and imposes the type of "insurmountable defense" constructed by legislative act that our supreme court condemned in *Barrio.* 143 Ariz. at 106, 692 P.2d at 285.

We therefore hold that section 4–312(B) unconstitutionally abrogates the general negligence cause of action recognized in *Ontiveros,* contrary to article 18, section 6 of the Arizona Constitution. Our holding does not, however, include a holding that either section 4–311 or its definition of "obviously intoxicated" is unconstitutional, as neither is so challenged in this appeal.

Reversed and remanded for further proceedings.

ESPINOSA, P.J., and HATHAWAY, J., concur.

---

**1.** *Cf. Callender v. Transpacific Hotel Corp.,* 179 Ariz. 557, 880 P.2d 1103 (App.1993) (not error to refuse instruction that defendant was liable for selling quantity of alcohol it knew or should have known created risk of injury when plaintiff displayed no obvious signs of intoxication and immediately left defendant's premises).