984 P.2d 559

**Merlin Lyneer CLOUSE, individually, as surviving spouse of Norma Clouse and on behalf of Guy Michael Clouse, surviving son of Norma Clouse; Guy Michael Clouse, individually; Lisandro Salinas and Debra Maria Salinas, individually and as husband and wife; Amber Salinas, Lissandra Salinas and Nathaniel Salinas, minor children of Lisandro Salinas, Plaintiffs–Appellants,**

v.

**STATE of Arizona, DEPARTMENT OF PUBLIC SAFETY; A.E. Dobbins, Defendants–Appellees.**

**Merlin Lyneer Clouse, individually, as surviving spouse of Norma Clouse and on behalf of Guy Michael Clouse, surviving son of Norma Clouse; Guy Michael Clouse, individually; Lisandro Salinas and Debra Maria Salinas, individually and as Husband and Wife; Amber Salinas, Lissandra Salinas and Nathaniel Salinas, minor children of Lisandro Salinas, Plaintiffs–Appellees,**

v.

**State of Arizona, Department of Public Safety, Maricopa County, Andrew Dobbins, Defendants–Appellants.**

**Nos. 1CA–CV97–0508, 1CA–CV97–0598.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 15, 1998.

As Amended Feb. 1, 1999.

Review Granted Sept. 21, 1999.

474

Coppersmith & Gordon P.L.C. by Andrew S. Gordon, Kristen B. Rosati, Phoenix, Attorneys for Appellants/Appellees Clouse and Salinas.

Grant Woods, Attorney General by John E. Birkemeier, Assistant Attorney General, Richard F. Albrecht, Assistant Attorney General Attorneys, Phoenix, for Appellees/Appellants State of Arizona and Dobbins.

## OPINION

NOYES, Judge.

¶ 1 A criminal was released due to alleged negligence by officers of the Department of Public Safety ("DPS") and the Maricopa County Sheriff's Office ("MCSO"), and he then victimized the Plaintiffs, who sued the officers and their employers. The trial court, in accordance with Arizona Revised Statutes Annotated ("A.R.S.") section 12–820.02(A)(1) (1989), instructed the jury that officers are liable for failure to retain an arrested person in custody only if the officers intend to cause injury or are grossly negligent. Plaintiffs argue that the statute is unconstitutional. We hold otherwise. We also hold that the trial court did not err in rejecting a "concert of action" instruction and in denying the State's motion for sanctions under Rule 68, Arizona Rules of Civil Procedure.

### Facts and Procedural History

¶ 2 On April 29, 1995, David Van Horn stole a truck in Maricopa County and fled into Pinal County. MCSO Deputy Robert Judd took the theft report in Maricopa County and DPS Officer Andrew Dobbins arrested Van Horn in Pinal County, knowing that Van Horn had there committed an aggravated assault on a pursuing citizen. After talking with Deputy Judd, Officer Dobbins understood that Van Horn would be prosecuted in Maricopa County, where he stole the truck. Dobbins had the Pinal County jail hold Van Horn for Maricopa County, he faxed his report to Deputy Judd, and he did nothing further. Van Horn was given a timely initial appearance in Pinal County, and his bond was set at $25,000.

¶ 3 Van Horn was still in the Pinal County jail on May 4, when a MCSO van arrived to transport another inmate. On learning about Van Horn, the MCSO deputies made some calls and discovered that no complaint had been filed in Maricopa County because Deputy Judd had not yet filed a report. Van Horn was put into the MCSO van anyway.

On the trip back to Maricopa County, however, the deputies decided that Van Horn had to be released because no complaint had been filed and it was more than 48 hours after initial appearance.[1] So the deputies pulled over to the side of U.S. 60 and released Van Horn—who promptly stole another vehicle, drove to New Mexico, and committed several outrageous crimes.

¶ 4 Van Horn and a companion invaded the home of an elderly couple, they abused and terrorized the couple, and they set fire to the home and watched it burn, with the couple still inside. Mrs. Clouse died; Mr. Clouse survived. In the ensuing manhunt, Van Horn shot a deputy in the head, twice; the deputy survived.

¶ 5 Mr. Clouse and his son, and Deputy Salinas and his wife and children, sued the State of Arizona and Maricopa County, alleging that their officers were negligent and grossly negligent in failing to retain Van Horn in custody. When Defendants invoked A.R.S. section 12–820.02(A)(1), which requires proof of gross negligence on this claim, Plaintiffs moved for partial summary judgment, arguing that the statute violates the anti-abrogation clause of the Arizona Constitution. The motion was denied.

¶ 6 At the close of the liability portion of the bifurcated trial, Plaintiffs moved for a directed verdict on negligence on grounds that section 12–820.02(A)(1) was unconstitutional. The court denied the motion and rejected Plaintiffs' proposed negligence instruction. Regarding the officers, the court instructed on a gross negligence standard. The jury apportioned fault as follows:

| | |
|---|---|
| State of Arizona | 0% |
| Maricopa County | 15% |
| David Van Horn [the criminal] | 50% |
| Diane Wilson [his companion] | 35% |

¶ 8 The State moved for sanctions under Rule 68(b), Arizona Rules of Civil Procedure, because it had served $5,000 offers of judgment on each group of Plaintiffs. The motion was denied.

¶ 9 Plaintiffs appealed from the judgment in favor of the State, and the State appealed

---

1. Rule 4.1(b), Arizona Rules of Criminal Procedure, provides, "If a complaint is not filed within 48 hours from the time of the initial appearance before the magistrate, the defendant shall be released from jail...."

from the denial of Rule 68(b) sanctions. The appeals have been consolidated. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## Qualified Immunity

█ ¶ 10 Arizona Revised Statutes Annotated section 12–820.02 provides as follows:

A. Unless a public employee acting within the scope of his employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:

1. The failure to make an arrest or the failure to retain an arrested person in custody.

Statutes are presumed to be constitutional. *See Pike v. Arizona Dep't of Transp.*, 261 Ariz. Adv. Rep. 29, 30, 1998 WL 30531 (App. Jan. 29, 1998). "The party asserting that a statute is unconstitutional has the burden of clearly demonstrating that it is." *Id.*

█ ¶ 11 Plaintiffs argue that section 12–820.02(A)(1) is an unconstitutional abrogation of the common law right to sue the government for negligence. In Plaintiffs' view, requiring proof of gross negligence in this case violates article 18, section 6 of the Arizona Constitution, which provides as follows: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." To put Plaintiffs' argument in context, we first discuss two landmark Arizona cases.

¶ 12 *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963), abolished governmental immunity in Arizona. *Id.* at 392, 381 P.2d at 112. The court concluded that "where negligence is the proximate cause of injury, the rule is liability and immunity is the exception." *Id.* Next came *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982), which had facts rather similar to those here. Ryan sued the State after being shot by an inmate who escaped due to alleged negligence by State employees. *See id.* at 308, 656 P.2d at 597. The trial court granted summary judgment to the State on grounds that its employees owed a duty to

the public but not to an individual. *See id.* at 308–09, 656 P.2d at 597–98. A divided court of appeals affirmed. *See id.* at 309, 656 P.2d at 598. The supreme court reversed; it abandoned the public duty/ private duty doctrine and held that, henceforth, "the parameters of duty owed by the state will ordinarily be coextensive with those owed by others." *Id.* at 310, 656 P.2d at 599.

¶ 13 The *Ryan* court tempered its holding by stating, "In electing to treat the state like a private litigant, we must hasten to point out that certain areas of immunity must remain." *Id.* The court also suggested that "the legislature may in its wisdom wish to intervene in some aspects of th[e] development" of remaining areas of governmental immunity. *Id. Ryan* concluded by articulating the test we will apply in the present case:

Employing the spirit of the Stone decision, we propose to endorse the use of governmental immunity as a defense only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy. Otherwise, the state and its agents will be subject to the same tort law as private citizens.

*Id.* at 311, 656 P.2d at 600.

¶ 14 In response to *Ryan*, the legislature enacted the Actions Against Public Entities or Public Employees Act (the "Act"), codified at A.R.S. sections 12–820 to 12–823. *See* 1984 Ariz. Sess. Laws ch. 285; *Galati v. Lake Havasu City*, 186 Ariz. 131, 133, 920 P.2d 11, 13 (App.1996). "The Act codified various common law doctrines that conferred absolute and qualified immunity on various public entities and employees." *City of Tucson v. Fahringer*, 164 Ariz. 599, 600, 795 P.2d 819, 820 (1990). The legislature recognized that strict application of sovereign immunity led to unfair and inequitable results, but it found that "the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." Historical and Statutory Notes, 1984 Ariz. Sess. Laws ch. 285, § 1. The legislature declared the public policy of the state to be "that public entities are liable for acts and omissions of employees in accor-

dance with the statutes and common law of this state." *Id.*

¶ 15  Plaintiffs argue that under Arizona common law, persons injured by police fault could recover by proving mere negligence. They cite *Ryan*, where the State negligently allowed an inmate to escape; *Austin v. City of Scottsdale*, 140 Ariz. 579, 684 P.2d 151 (1984), where a dispatcher negligently processed a phone call; and *Hutcherson v. City of Phoenix*, 188 Ariz. 183, 933 P.2d 1251 (App.1996), *vacated on other grounds*, 192 Ariz. 51, 961 P.2d 449 (1998), where a 911 operator negligently processed a phone call. These cases must be distinguished. Because *Austin* and *Hutcherson* involved governmental negligence that was not protected by statute, and *Ryan* was decided before section 12–820.02 was enacted, none of the cases is inconsistent with the constitutionality of section 12–820.02(A)(1).

¶ 16  Plaintiffs argue that section 12–820.02(A)(1) abrogates the common law claim recognized by *Ryan*, the claim for negligently failing to retain a person in custody. We agree. Plaintiffs argue that, according to *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993), their negligence claim is protected by the anti-abrogation clause, even though this claim did not exist until *Ryan* recognized it. We disagree.

¶ 17  *Hazine* held that article 18, section 6 " 'is not limited to those elements and concepts of particular [causes of action] which are defined in our pre-statehood case law.' " *Hazine*, 176 Ariz. at 343–44, 861 P.2d at 628–29 (quoting *Boswell v. Phoenix Newspapers*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987)). The court reasoned that, although a cause of action for strict product liability did not exist in pre-statehood Arizona, a right of action for product-caused injury *did* then exist, and the anti-abrogation clause *does* cover post-statehood causes of action that have developed to vindicate pre-statehood rights of action. *See id.* at 344, 861 P.2d at 629.

¶ 18  "Article 18, § 6 was not enacted to protect particular doctrines, theories or 'causes of action.' The text of the constitu-

tion protects a broader concept—'the *right of action* to recover damages for injuries.' " *Hazine*, 176 Ariz. at 344, 861 P.2d at 629 (quoting *Bryant v. Continental Conveyor & Equip. Co.*, 156 Ariz. 193, 198, 751 P.2d 509, 514 (1988) (Feldman, V.C.J., dissenting)). The "right of action" concept is significant to resolution of the present case. The negligence cause of action existed in pre-statehood Arizona, but because sovereign immunity also existed in those days, Arizona had no pre-statehood right of action against the government for negligence. *See Pike*, 261 Ariz. Adv. Rep. at 31 ("A right of action against the state was not recognized in the common law when the Arizona Constitution was adopted; the common law doctrine of sovereign immunity served to shield governmental entities from tort liability."). We hold that the anti-abrogation clause does not apply to negligence actions against the government in Arizona.

¶ 19  Plaintiffs' next argument goes as follows: Arizona had a pre-statehood common law rule of tavern owner nonliability for furnishing liquor to intoxicated persons; *Ontiveros v. Borak*, 136 Ariz. 500, 507–08, 667 P.2d 200, 207–08 (1983), abolished that rule and recognized a negligence cause of action against tavern owners for furnishing liquor to intoxicated persons; the legislature enacted a statute that abrogated part of that cause of action; *Young v. DFW Corp.*, 184 Ariz. 187, 190, 908 P.2d 1, 4 (App.1995), held that said statute violated the anti-abrogation clause; and the same reasoning should apply here. We disagree. Many differences exist between tavern owner nonliability and governmental immunity. For one thing, as *Ontiveros* made clear, the common law rule of tavern owner nonliability was *not* a rule of immunity:

> All counsel agreed at oral argument that the common law rule was not a rule of immunity. Indeed, it is impossible to imagine why, of all occupations, those who furnish liquor should be singled out for a judicially conferred blessing of immunity to respond in damages for their wrongful acts. The common law rule was one of nonliability, founded ... upon concepts of causation.... Our common sense [now]

tells us that both the furnishing and the drinking are part of the chain of cause and effect that produces accidents such as the one in this case.

*Ontiveros,* 136 Ariz. at 505, 667 P.2d at 205.

¶ 20 *Ontiveros* abolished a common law rule of nonliability that had outlived any valid purpose. "It seems clear that the common law rule is an anachronism, unsuitable to our present society, and that its reasoning is repugnant to modern tort theories." *Id.* at 507, 667 P.2d at 207 (quoting *Lewis v. Wolf,* 122 Ariz. 567, 570, 596 P.2d 705, 708 (App. 1979)). The present case does not involve a pre-statehood common law rule that had become repugnant; it involves modern day legislation in response to *Ryan.* The constitutionality of that legislation must therefore be tested by *Ryan* rather than by *Ontiveros* and *Young.*

¶ 21 We now apply the *Ryan* test to decide whether the qualified immunity of section 12–820.02(A)(1) is constitutional; to decide whether the protection of the statute "is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy." 134 Ariz. at 311, 656 P.2d at 600. We conclude that it is. Governmental immunity for the negligence alleged in this case has been the public policy of Arizona for its entire history, except for the relatively brief period of time between December 1982, when *Ryan* issued, and August 1984, when section 12–820.02(A)(1) went into effect. Plaintiffs have shown no good reason to thwart that well-established public policy. We hold that police work in a modern society is a vital governmental function that would be severely hampered if officers could not count on qualified immunity for decisions such as whether to retain an arrested person in custody:

> The public has a vital stake in the active investigation and prosecution of crime. Police officers and other investigative agents must make quick and important decisions as to the course an investigation

shall take. Their judgment will not always be right; but to assure continued vigorous police work, those charged with that duty should not be liable for mere negligence.

*Landeros v. City of Tucson,* 171 Ariz. 474, 475, 831 P.2d 850, 851 (App.1992) (quoting *Smith v. State,* 324 N.W.2d 299, 301 (Iowa 1982)).[2]

¶ 22 We hold that section 12–820.02(A)(1) is a constitutional grant of governmental immunity. The trial court did not err in instructing the jury on a gross negligence standard of care.

## Acting in Concert

¶ 23 Plaintiffs requested an "acting in concert" instruction; such an instruction would allow the jury to impute information known by DPS to MCSO, and vice versa, if it found that the officers were acting in concert regarding Van Horn, and it would allow for a finding of joint liability against DPS and MCSO. The trial court rejected the instruction, and properly so.

¶ 24 The flaw in Plaintiffs' joint-liability argument is this: Arizona's "acting in concert" exception to several liability applies only to intentional torts, and Plaintiffs did not allege that the officers committed any intentional torts.

¶ 25 Arizona Revised Statutes Annotated section 12–2506 (1994) provides in part:

> **D.** The liability of each defendant is several only and is not joint, except that:
>
> 1. A party is responsible for the fault of another person, or for payment of the proportionate share of another person, if both the party and the other person were acting in concert or if the other person was acting as an agent or servant of the party.

Section 12–2506(F)(1) defines "acting in concert" as follows:

> **F.** As used in this section:
>
> 1. "Acting in concert" means entering into a conscious agreement to pursue a common plan or design to commit an intentional tort and actively taking part in that

**2.** *Hutcherson* decided that 911 operators were liable for mere negligence, but it did not disagree with the *Landeros* policy statement. *Hutcherson* decided that, because 911 operations were not yet protected by any statute, *Ryan* 's general rule of liability for negligence applied. *See Hutcher-* *son,* 188 Ariz. at 190, 933 P.2d at 1258. Arizona Revised Statutes Annotated section 12–713 (Supp.1997) now provides that those involved in emergency call systems are not liable for mere negligence.

intentional tort. *Acting in concert does not apply to any person whose conduct was negligent in any of its degrees rather than intentional.* A person's conduct which provides substantial assistance to one committing an intentional tort does not constitute acting in concert if the person has not consciously agreed with the other to commit the intentional tort. (Emphasis supplied.)

¶ 26 Plaintiffs rely on cases from other states. *See State v. Barnes,* 58 Haw. 333, 568 P.2d 1207, 1210 (Haw.1977); *State v. Satern,* 516 N.W.2d 839, 841 (Iowa 1994); and *State v. Moore,* 72 Or.App. 202, 695 P.2d 936, 937 n. 4 (Or.App.1985). These cases hold that knowledge of one officer was knowledge of all officers who were acting in concert. That principle is sound when and where it applies, but that principle must yield to the section 12–2506(F)(1) definition of "acting in concert" where it applies, and it applies here.

¶ 27 Plaintiffs also rely on cases involving physicians. *See Scruggs v. Otteman,* 640 P.2d 259, 260 (Colo.App.1981); *O'Grady v. Wickman,* 213 So.2d 321, 325–26 (Fla.App. 1968); *Ramos v. Pankaj,* 203 Ill.App.3d 504, 149 Ill.Dec. 374, 561 N.E.2d 744, 745 (Ill.App. 1990). These cases hold that negligence by one physician is negligence of all physicians who are acting in concert. As noted by *Scruggs,* the "[i]mposition of liability in these circumstances is ... premised upon joint tortfeasor principles." 640 P.2d at 260–61. Arizona's comparative fault scheme has done away with most joint tortfeasor principles; it provides that liability is several only and not joint unless certain conditions exist. As noted above, the conditions for joint liability based on "acting in concert" do not exist in this case.

### Rule 68 Sanctions

¶ 28 Long before trial, the State made unapportioned offers of judgment to each group of Plaintiffs for $5,000 plus taxable costs. Neither group accepted the offer. After the liability verdict in favor of the State, the State sought sanctions against Plaintiffs pursuant to Rule 68(d), Arizona Rules of Civil Procedure. The motion was denied, the State appealed, and we affirm.

¶ 29 Rule 68(d) provides in part:

If the judgment finally obtained is equal to, or more favorable to the offeror than, the offer, the offeree must pay, as a sanction, those reasonable expert witness fees and double the taxable costs of the offeror, as defined in A.R.S. § 12–332, incurred after the making of the offer. . . .

This rule "provides a method by which a defendant can avoid liability for most taxable costs by making an early, realistic offer of judgment." *Ayala v. Olaiz,* 161 Ariz. 129, 132, 776 P.2d 807, 810 (App.1989).

¶ 30 Ordinarily, "a trial court lacks authority to relieve the rejecting recipient from the sanctions that the rule imposes." *Davis v. Discount Tire Co.,* 182 Ariz. 571, 573, 898 P.2d 520, 522 (App.1995). However, *Duke v. Cochise County,* 189 Ariz. 35, 938 P.2d 84 (App.1996), held that "unapportioned joint offers of judgment [are] invalid for purposes of imposing sanctions under Rule 68, regardless of the outcome at trial." *Id.* at 41, 938 P.2d at 90. The facts here are covered by the holding in *Duke,* with which we agree.

¶ 31 The judgments are affirmed.

CONCURRING: NOYES, P.J., and KLEINSCHMIDT and TOCI, JJ.