30 P.3d 634

David CALNIMPTEWA and Margaret Calnimptewa, husband and wife, Plaintiffs–Appellants,

v.

FLAGSTAFF POLICE DEPARTMENT; City of Flagstaff; E.P. Madden, Chief of Police, Flagstaff Police Department; Mayor Chris Bavasi, and the Flagstaff City Council; Corporal Wayne Dorsett, Flagstaff Police Department; Officer Michael Barnes, Flagstaff Police Department, Defendants–Appellees.

No. 1 CA–CV 00–0552.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 28, 2001.

Trebon & Fine, P.C., by John Trebon, Flagstaff, Attorneys for Appellants.

Mangum, Wall, Stoops & Warden, P.L.L.C., by Michael H. Hinson, Steven B. Horton, Flagstaff, Attorneys for Appellees.

## OPINION

SULT, Judge.

¶ 1 In this wrongful death action, we construe the scope of Arizona Revised Statutes section 12–820.02(A)(1)(2000), a statute granting immunity to public employees for ordinary negligence arising out of the "failure to retain an arrested person in custody ." We conclude that the legislature did not intend this language to include the decision of municipal police officers to "release" an inebriated arrestee by transferring his custody to the county jail. Because the trial court found to the contrary, we reverse the grant of summary judgment entered in favor of appellees and remand this matter for further proceedings.

## BACKGROUND

¶ 2 On the evening of October 27, 1998, Herb Bridgman, the owner of Ruff's liquor store in Flagstaff, noticed a man lying under a truck parked in the store's parking lot. Bridgman told the man to leave but the man did not respond coherently. Bridgman consequently called the Flagstaff Police Department for assistance in removing the man from the property.

¶ 3 Flagstaff police officers Michael Barnes and Wayne Dorsett responded at approximately 6:45 p.m. and found thirty-eight year old David Dewayne Calnimptewa sitting next to a truck parked in front of the store. Calnimptewa was conscious but very intoxicated. He exhibited bloodshot eyes, slurred speech and a strong odor of alcohol, and his movements were slow and lethargic. Because Calnimptewa could not stand or walk without assistance, Barnes helped him to his feet and identified him from documents in his wallet. After checking for arrest warrants and finding none, Barnes arrested Calnimptewa for trespassing.

¶ 4 Barnes placed Calnimptewa in his patrol vehicle, and Barnes and Dorsett then transported him to the Coconino County Jail, arriving at approximately 7:00 p.m. Calnimptewa's custody was transferred to Coconino County jail personnel who booked him on the trespassing charge. The booking officer described Calnimptewa as "extremely intoxicated [and] uncooperative towards myself [and] the arresting officers." Calnimptewa refused to answer medical questions and was placed in a cell.

¶ 5 At about 9:45 p.m., during a routine inspection tour conducted approximately every fifteen minutes, jail personnel noticed that Calnimptewa had vomited in his cell and was lying face down in the vomitus. The jailers rolled Calnimptewa onto his side and determined that he was breathing, but did nothing further for him at that time. About 10:30 p.m., jail personnel returned with a floor attendant to clean the cell and found that Calnimptewa was no longer breathing and had either no pulse or an extremely weak pulse. The jailers attempted to revive him and paramedics continued resuscitation efforts when they arrived. Although the paramedics were successful in restoring Calnimptewa's heartbeat, they were unable to restore his neurological functions.

¶ 6 Calnimptewa was transported to the Flagstaff Medical Center where he registered a blood-alcohol level of .437. On his admission, he was described as "smelling strongly of ethanol" and "completely unre-

sponsive to verbal or noxious stimuli" with a "[g]rim prognosis". He died two days later.

¶ 7 Appellants, the parents of decedent, brought a wrongful death action against appellees the City of Flagstaff and its mayor, the Flagstaff Police Department and its chief, and individual officers Barnes and Dorsett alleging, *inter alia*, that the arresting officers should have recognized that Calnimptewa was so intoxicated that he was seriously ill, and that the officers were therefore negligent in failing to obtain medical care for him while he was in their custody. Appellees moved for summary judgment arguing, *inter alia*, that § 12–820.02(A)(1) granted qualified immunity to the arresting officers' decision to transfer Calnimptewa's custody to Coconino County jail personnel rather than take him to a hospital for medical care. Consequently, appellees argued, appellants were required to show that the officers were grossly negligent in their decision-making, rather than merely ordinarily negligent. Because no reasonable juror could find gross negligence on the record presented, appellees concluded, they were entitled to judgment as a matter of law.

¶ 8 The trial court agreed with appellees, finding the statute applicable to the officers' decision to jail Calnimptewa. Consequently, the court found that

> The Plaintiff must show that the Flagstaff police officer defendants were grossly negligent when they failed to retain custody of the Plaintiff for the purpose of seeking medical assistance but instead turned custody of the arrestee over to Coconino County.

The court found insufficient evidence of gross negligence and thereafter entered judgment dismissing all claims. Appellants timely appealed.[1]

**1.** We dispose of the other issues raised by appellants in a separate memorandum decision issued contemporaneously with this opinion. Rule 28(g), Arizona Rules of Civil Appellate Procedure. Coconino County and the Coconino County ·Sheriff's Department settled with appellants and are not part of this appeal.

**2.** Appellees characterize the officers' action as a decision between mutually exclusive alternatives:

## ANALYSIS

¶ 9 Section 12–820.02 provides in pertinent part:

> A. Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:
>
> 1. The failure to make an arrest or the failure to retain an arrested person in custody.

According to appellees, the officers had a choice either to take Calnimptewa to a hospital for medical care or to turn him over to the jail. Appellees contend that their decision not to retain him in their custody for medical care purposes is the type of "failure to retain in custody" decision for which the statute provides qualified immunity.[2]

¶ 10 Appellees' argument assigns us the task of statutory construction, and our interpretive undertaking is conducted *de novo*. *Badia v. City of Casa Grande*, 195 Ariz. 349, 352, ¶ 11, 988 P.2d 134, 137 (App. 1999). The first step is to examine the statute's language and, if the meaning of the language used by the legislature is plain, that meaning controls the statute's application. *Champlin v. Sargeant*, 192 Ariz. 371, 374, ¶ 15, 965 P.2d 763, 766 (1998).

¶ 11 Appellees assert that a "plain language" examination of § 12–820.02(A) supports their position. We agree that the statute plainly includes law enforcement agents within the definition of "public employee," and plainly provides qualified immunity to police decisions to release individuals from custody. What is not plain, however, is appellees' proposition that the phrase "failure to retain an arrested person in custody" includes an officer's decision to transfer an arrestee's physical custody to jail personnel. Appellees do not illustrate how such a result

either obtain medical care for Calnimptewa or transfer him to jail personnel. In fact, these are two separate decisions that are independent of each other, and logically should be analyzed separately. Appellees instead have coupled the decisions and analyzed them as one under the statute. Because appellants have not disputed the manner in which appellees have framed the issue, we address it as presented.

can be gleaned from the statutory language and our immediate reaction is that appellees' reading appears to rupture the linguistic boundaries plainly apparent in the statute and extend its reach beyond what the legislature intended.

¶ 12 Appellees nevertheless deny that their interpretation is an impermissibly expansive reading of the statute, so we must examine their argument closely. Our initial concern is that appellees' interpretation misstates the meaning of "custody" as used in the phrase "the failure to retain an arrested person in custody." We believe that term plainly refers to the state of being physically restrained by a law enforcement agency, without regard to which particular agency might actually have control of the person. Appellees' reading would add a requirement that each agency transferring custody be individually identified so as to ascertain the agent to whom immunity is to apply. This addition would necessitate the implicit insertion of a qualifier before the term "custody," and the statute would now effectively have to read "the failure to retain an arrested person in *that agency's* custody."

¶ 13 Of course, the statute does not have such a qualifier because it is not concerned with who has custody but rather with the state of being in custody; that is, the state of being actually restrained. *See* A.R.S. § 13–3881(A) (2001) ("An arrest is made by an actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest."). We conclude that the release-from-custody decision at which the statute is aimed is a decision that changes the status of the arrestee from custodial to free, not a decision that merely changes the identity of the custodian. The legislature did not use the qualifier that would be needed if appellees' interpretation had been intended, and we are not authorized to supply words that would extend the scope of a statute beyond that intended by the legislature. *Board of Supervisors of Maricopa County v. Pratt*, 47 Ariz. 536, 542–43, 57 P.2d 1220, 1223 (1936).

¶ 14 As an alternative to their statutory construction argument, appellees assert that several cases dealing with § 12 820.02(A)

require that we adopt their interpretation. Appellees cite *Walls v. Arizona Department of Public Safety*, 170 Ariz. 591, 826 P.2d 1217 (App.1991), *Luchanski v. Congrove*, 193 Ariz. 176, 971 P.2d 636 (App.1998), and *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 16 P.3d 757 (2001), as support.

¶ 15 *Walls* involved an injured motorist's suit against an Arizona Department of Public Safety officer claiming that the officer was negligent for not having stopped the offending motorist whom the officer had suspected of being intoxicated. 170 Ariz. at 592–93, 826 P.2d at 1218–19. This court held the officer's failure to make a stop was equivalent to a failure to make an arrest and was therefore qualifiedly immune under § 12–820.02(A)(1). *Walls*, 170 Ariz. at 594–95, 826 P.2d at 1220–21. We said it would be absurd to deny immunity for a failure to stop which, if made, could have resulted in a failure to arrest which would clearly have been immunized. *Id.*

¶ 16 Appellees' only point with regard to *Walls* is to argue that just as it would have been absurd not to extend "failure to arrest" immunity in that case, it would be equally absurd not to extend "failure to retain" immunity to the officers in this case. However, *Walls* and the instant case are not at all analogous. Factually, an arrest follows a stop and logically immunity granted for the former should implicitly extend to the latter. In this case, there was just custody, to which the statute does not apply, followed by continuing custody. The logic appropriately applied in *Walls* simply does not work here.

¶ 17 Appellees' next case, *Luchanski*, involved an arrestee who was seriously injured when she got out of a patrol vehicle in which she had been left handcuffed and unattended. 193 Ariz. at 177, ¶ 2, 971 P.2d at 637. She sued the arresting officer, arguing that his leaving her unattended permitted her to fall down an embankment when she exited the car. *Id.* In that case, the arrestee argued for the first time on appeal that her injury occurred while she was in custody and therefore the "failure to retain in custody" immunity provision could not apply. *Id.* at 178 n. 2, 971 P.2d at 638 n. 2. Because that issue

had not been raised in the trial court, the *Luchanski* court declined to decide the provision's applicability to an arrestee who was still in custody and analyzed the incident as though it had occurred in the context of a release from custody. *Id.*

¶ 18 The issue actually presented in *Luchanski* was whether the "failure to retain in custody" provision could apply when the injury was not inflicted by the released arrestee upon a third person but was suffered by the released arrestee herself. *Id.* at 178, ¶ 7, 971 P.2d at 638. We construed the statute as applying in either situation. *Id.* at 178–79, ¶¶ 9, 14, 971 P.2d at 638–39.

¶ 19 Appellees acknowledge that *Luchanski* did not decide the issue presented in this case because the court there assumed for purposes of analysis that the arrestee had been released from custody. Appellees nevertheless argue that the *Luchanski* court could have considered whether the arrestee was in custody because appellate courts can decide issues not presented at the trial level if they are of statewide importance, citing *Barrio v. San Manuel Division Hospital for Magma Copper Co.*, 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984). Appellees then reason as follows: *Luchanski* had the option to consider whether the immunity provision could apply to an arrestee still in custody, but declined to consider the question. Had the court considered the question, it could have summarily rejected the proposition that the statute should apply in that situation. That the *Luchanski* court did not consider and summarily reject the proposition suggests that the court was open to a far-reaching application of the immunity statute and thereby *implicitly invited a future court to* expand the "failure to retain" provision to include transfers of custody.

¶ 20 Appellees urge that we should accept the invitation they discovered in *Luchanski*, but we do not discern any such invitation. The *Luchanski* court expressly declined to consider the question presented in this case, and the only significance such a decision carries is that the question remains open. *Luchanski* is simply of no assistance to appellees in this case.

¶ 21 Appellees' last case, *Clouse*, did involve an arrestee who was released from custody and harmed others. 199 Ariz. at 197, ¶ 3, 16 P.3d at 758. The arrestee was initially detained by an Arizona Department of Public Safety officer who in turn transferred the arrestee's custody to Pinal County jailers. *Id.* at ¶¶ 2–3. Because the arrest was for a Maricopa County crime, that entity was notified and two Maricopa County Sheriff's deputies obtained the arrestee's custody but subsequently released him because no complaint had yet been filed. *Id.* at ¶ 3. He then embarked upon a murderous rampage. *Id.* at 197–98, ¶ 4, 16 P.3d at 758–59.

¶ 22 At trial on a suit brought by the victims or their survivors, the trial court submitted the liability issue of both the state patrol officer and the county sheriff's deputies to the jury on a theory of gross negligence only. *Id.* at 198, ¶ 5, 16 P.3d at 759. The jury exonerated the state defendant and found against the county defendants. *Id.* at ¶ 6. On plaintiffs' appeal of the verdict in favor of the state, the only issue presented to our supreme court was the constitutionality of § 12–820 .02(A)(1), and the court affirmed the constitutional authority of the legislature to enact the statute. *Clouse*, 199 Ariz. at 203–04, ¶¶ 24, 29, 16 P.3d at 764–65.

¶ 23 Appellees read the facts in *Clouse* as support for their argument, asserting that the liability producing conduct alleged on the part of the state patrolman was the transfer of the arrestee's custody to jail personnel. The trial court applied the qualified immunity statute to this conduct, appellees argue, and the supreme court affirmed, stating:

> [W]e conclude that the trial court correctly instructed the jury that it could return a verdict against the public defendants only if the plaintiffs established gross negligence.

*Id.* at 204, ¶ 29, 16 P.3d at 765.

¶ 24 We disagree that appellees correctly interpret the facts in *Clouse* and therefore disagree as to the impact the supreme court's conclusion has on this case. We first note that the issue we address here was not presented in *Clouse*, either directly or by fair implication. Thus, the precise manner in which the patrolman was allegedly responsi-

ble for a "failure to retain in custody" was not delineated. That is not surprising because appellate opinions generally do not include facts that are not necessary to a resolution of the issues presented, and it is always inappropriate to read an appellate opinion as authority for matters neither specifically presented and discussed, nor even accorded footnote mention.

¶ 25 We next note that additional facts found in this court's opinion in the same case undermine appellees' conclusion regarding the factual underpinnings of the patrolman's alleged liability. *See Clouse v. Department of Public Safety*, 194 Ariz. 473, 984 P.2d 559 (App.1998). In that opinion, we report that the patrolman knew that the individual he arrested had assaulted a person in Pinal County. 194 Ariz. at 475, 984 P.2d at 561. However, while he directed Pinal County jailers to hold the arrestee for the Maricopa County offenses, he apparently did not file a criminal complaint regarding the Pinal County offense. *Id.* Clearly, had he filed such a complaint, the arrestee would not have been released from custody but would have been held for Pinal County prosecution.

¶ 26 Like the supreme court, our *Clouse* opinion does not detail the precise allegations against the patrolman. We presume, however, that it was the patrolman's failure to file a Pinal County complaint against the arrestee, not the transfer of the arrestee's custody to Pinal County jailers, that underlay the allegation of liability. This failure-to-file conduct presumably was the omission to which the "failure to retain in custody" qualified immunity was applied and the conduct that the supreme court concluded should be judged by a gross negligence standard.

¶ 27 We acknowledge that because neither of the two *Clouse* opinions clearly discloses the facts upon which the patrolman's alleged liability was based, both our interpretation and appellees' interpretation are suspect as relying in part upon speculative inferences. Fortunately, we are not required to elect one interpretation over the other because both are irrelevant. This is so because of the precept noted above: an appellate opinion is of no authority for matters not raised therein, and our exercise in comparative specula-

tion clearly illustrates the wisdom of that rule. We therefore refuse to read *Clouse* as validating appellees' position here.

## CONCLUSION

 ¶ 28 Appellees' reading of § 12–820.02(A) does not accord with the statute's plain language and we therefore decline to adopt it. Because the statute does not apply to this case, the actions of the police officers regarding Calnimptewa must be judged by standards of ordinary negligence. *See* Restatement (Second) of Torts § 314(A)(4) (1965) (dealing with the duty of an actor to a person he has confined). We reverse the trial court's grant of summary judgment to appellees and remand this matter for further proceedings consistent with this opinion.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and E.G. NOYES, JR., Judge.